**SCOTT et, Plaintiffs-Appellees v. SNYDER, Defendant-Appellant.**

Ohio Appeals, Second District, Montgomery County.

No. 1668. Decided June 19, 1943.

Thomas, Hyers, Leyland & Stewart, Dayton, for plaintiffs-appellees.

E. E. Duncan, Dayton, and Hon. Mason Douglass, Dayton, for defendant-appellant.

## OPINION

By HORNBECK, J.

This is an appeal on questions of law and fact from a judgment of the Court of Common Pleas permanently enjoining the defendant from proceeding with the construction of any structure upon or from exercising private control or enjoying private possession of Lot No. 1 on the Salem Heights plat, Harrison Township. Montgomery county, Ohio. The appeal requires the consideration de novo of the case.

The issue is whether the plaintiffs, owners of lots in the Salem Heights plat and representative of the public, have established the common law dedication of Lot No. 1 in said plat known as "Children's Playground". A record consisting of about 400 pages of testimony, together with exhibits, discloses the factual disputes between the parties as to both elements of common law dedication, namely, the intention of the dedicator to make dedication of the Children's Playground and the acceptance of said dedication by the public.

The facts develop, that on July 14, 1908, the C. A. Wirshing Co., a real estate corporation, duly recorded a plat known as the Salem Heights plat in the office of the recorder of Montgomery county, Ohio. The plat delineated some 400 lots, together with streets and alleys which were duly dedicated. As a part of said plat there was shown a piece of land approximately 250 by 390 feet. There was no specific statutory dedication of this parcel, Lot No. 1, designated "Children's Playground". Succeeding the recording of the plat of

the subdivision, the C. A. Wirshing Co. promoted the sale of the lots and, as a part of the selling campaign, had folders, dodgers and other printed matter struck and circulated upon which was carried the plat of the subdivision with numbered lots, streets and alleys and shown thereon the Children's Playground as a part of the subdivision. It, also, appears and the testimony is undisputed that C. A. Wirshing, the moving spirit in the project, told prospective purchasers of lots and authorized his representatives to state, that the Children's Playground was a part of the subdivision intended to be used for all time for the purposes of a children's playground. The sale of the lots was not completed rapidly and for a number of years there was a hiatus in the development of the subdivision.

In 1924 the defendant, Sherwood P. Snyder, purchased the unsold lots in the subdivision, some 116 lots, together with Lot No 1. Mr. Snyder testified that the consideration for Lot No. 1 was $3200 and it, also, appears that he has paid certain back taxes. So that at the time of the trial, he estimated that he had upwards of $5,000 invested in this lot.

This is a substantial investment but the defendant's rights, except those that may have resulted since his acquisition of the property, rise no higher than those of the grantor, the C. A. Wirshing Co.

It will serve no good purpose to discuss in detail the testimony of the numerous witnesses who appeared for the respective parties in the case, nor to cite authorities as to the law which is not in dispute. We could be well content to accept the opinion of Judge Hodapp which we have before us as it is complete in the discussion of the law and factual developments.

There are but two questions presented, namely, the intention of the C. A. Wirshing Co. as respects the dedication of Lot No. 1. known as the Children's Playground, and, if dedication be found, whether or not user has been established on the part of the public.

We find no reasonable conclusion to be drawn from the facts appearing other than, at the time the Wirshing Co. filed its plat of the Salem Heights subdivision, it then and there intended to dedicate Lot No. 1 as a Children's Playground, as a part of said subdivision to be used particularly by those purchasing lots in the subdivision and, also, by the general public. This purpose and intention was clearly manifested by the delineation by lines, lot number, and by the term "Children's Playground". The subsequent conduct and acts on the part of the company and its representatives, were confirmatory of the intention manifested by the filing of the plat for recordation. It is obvious that undenied and unexplained and without some reservation, the purpose to be inferred from the filing of the plat, with Lot No. 1 characterized as "Children's Play-

ground", was that it was so intended to be used and was so dedicated. The argument is that because the Children's Playground was not formally dedicated by express language, it is therefore to be determined that there was a purpose not to dedicate the playground for the purpose indicated. This same argument was advanced in **Thompson v. Columbus, 30 O. D. 198** wherein the court cited Price v. Plainfield, 40 N. J. L. 608, Maywood Co. v. Maywood (Ill.), 6 N. E., 866, to effect that

"the word 'park' written upon a block upon a map of city property indicates a public use; and conveyances made by the owner of the platted land by reference to such map operate conclusively as a dedication of the block."

In the instant case the transfers of lots within the subdivision were made with reference to the plat. Such procedure has without exception been held to amount to dedication to public use, 13 Cyc. 455.

It is urged that the Wirshing Co. exercised dominion over the playground at the time of the dedication of the plat until the transfer to the defendant and as proof of this fact the payment of taxes is established. This one act of dominion appears. However, it is universally held that the levying of taxes or the paying of same is not conclusive but evidentiary of the purpose of the owner of the fee. It is likewise true that this is the only act of dominion exercised by the defendant. It does not appear at any time that any use, other than the beginning of building operations, was attempted by either owner of the lot inconsistent with its full use for the purpose for which dedicated to the public.

It is, also, urged that Lot No. 1 was and is not suitable for a children's playground. This is a matter of opinion. The topography of the land is the same now as it was when the Wirshing Co. dedicated it for the purpose of a children's playground. Many better places for organized play, no doubt could have been chosen, but the dedicator made selection maybe because of its terrain. That the ground is precipitous, in places somewhat hazardous, may be determined not only from the record and probably from an inspection of the land but the plat, made an exhibit in the record, is specific in showing by numerous markings that the playground was hilly. In fact, the characters employed are those commonly used on maps to indicate mountainous country. It is apparent that the lot is not suitable for organized play such as would be carried on upon level ground because there is very little of level space upon the lot.

The second question, namely, that of user is not demonstrated as clearly as is the intention of the dedicator to dedicate the lot

to public use. However, it must be observed that this subdivision; when platted, was outside of the city limits of Dayton in open country, sparsely settled. This did not affect the right of the Wirshing Co. to effect dedication of the playground, Iowa Loan & Trust Co. v. Board of Supervisors et, (Ia.), 174 N. W. 99. It was the purpose of the Wirshing Co. to develop this land and by stipulation of sale of lots and the erection of dwellings upon them to build up a considerable population upon the subdivision. At this juncture, it might be said that it is probable that the Wirshing Co., did change its mind as to a purpose to dedicate years after the dedication was completed. The difficulty with this change of purpose is that it came too late and after rights had vested.

The user of the playground was such as was proper upon a piece of wild, woody land in which there were precipitous places and some ravines.

The testimony of some twenty witnesses on behalf of the plaintiffs is convincing, that the use of the playgrounds was quite general in the light of the number of persons who could be expected to so use them. Many testified to having throughout the years frequented the grounds for the purposes of play and they, also, named and designated groups of children who did likewise. This affirmative testimony is more satisfactory than the negative testimony of the witnesses on behalf of the defense, who either said that they themselves had not used the grounds for play, or, that they did not understand that they were public playgrounds.

We have noted that no public authority, either the township trustees or the county commissioners, who would normally supervise these playgrounds, has manifested any purpose to exercise control over them or to insist upon any right of the public to use them. This has been somewhat disconcerting as affects the future use and maintenance of the playground but such action is not at all determinative of the question whether or not the grounds have been accepted by the public.

"An offer of dedication to bind the dedicator, need not be accepted by the city or county or other public authorities, but may be accepted by the general public. To deny this would be to deny the whole doctrine of dedication." 26 C. J. S. 99.

The proof established by the plaintiffs in this case appears under all the circumstances to require this court, as did the Common Pleas Court to hold that the user by the public has been established.

Judgment for the plaintiffs as prayed.

BARNES, P. J., and GEIGER, J., concur.