MAGIC et, Plaintiffs, v. BASQUIN, Defendant.

Common Pleas Court, Geauga County.

No. 10998.

Frank V. Opaskar, Cleveland, for plaintiffs.
Harold K. Bostwick, Chardon, for defendant.

378

By THOMAS, J:

Plaintiffs seek to enjoin the defendant County Recorder from making a record and certifying the transcript of incorporation of Kiwanis Lake Sub-divisions 1 and 2, as the Village of Kiwanis Lake.

Plaintiffs own lots in said Sub-divisions, and also, as Trustees, claim to hold legal title to the Sub-divisions' roads, parks, and lake for the exclusive use of all the lot owners.

Fifty-four electors, residing at Kiwanis Lake, petitioned the County Commissioners to incorporate said Sub-divisions, a platted territory. At a duly advertised hearing the County Commissioners granted the petition after finding that the population of said proposed corporation consists of 405 year around residents and 183 summer people, that all necessary legal steps had been taken, and that it was right and proper that the petition should be granted. The Commissioners thereupon certified the papers and records of the proceedings to the defendant County Recorder.

The two Sub-divisions were created by plats filed and recorded with defendant County Recorder on October 29, 1919, and August 3, 1920, respectively.

On the plat for Sub-division No. 1, officers of Kiwanis Lake Realty Company inscribed that "as owners of the land shown on the plat" they accepted the Sub-division and dedicated the streets shown on the plat "for the exclusive use of the lot owners in said Sub-division."

On the plat for Sub-division No. 2, officers of Kiwanis Lake Realty Company inscribed that as owners they dedicated the "drives, lane, lake and parks shown hereon to the use of lot owners only."

Kiwanis Lake Realty Company, by subsequent deed, granted to certain named trustees and their successors, all of its right and title to "all of the parcels as shown on the recorded plat and marked as Park, Block A and Block B, together with the partially dedicated roads which are marked as Drives or Lanes and the Lake and Parkland surrounding the lake, etc. * * * so that uses of the Lake, Park, Playplaces and drives in Kiwanis Lake Subdivisions 1 and 2 may be properly regulated and restricted."

Plaintiffs are successor trustees appointed by the Probate Court pursuant to the provisions of such deed.

The essence of plaintiffs' objections to the incorporation is stated in the following excerpt from their petition:

"Plaintiffs further say that incorporation proceedings * * * are unjust and inequitable in the following respects:

       *       *       *       *

"c. In that it would and does attempt to create an incorporated village out of a private community and in so doing deprive the property owners of their rights in and to the private roadways, parks, beaches and other facilities, the title whereof vests in the Trustees, plaintiffs herein, for the benefit of all property owners; that the plat filed with this incorporation proceeding is co-extensive with the Kiwanis Lake development and by virtue thereof would seek to impose upon a private community a government which would have no jurisdiction over the roads, parks, beaches and other facilities of the community, but would increase the burden upon the property owners by increasing the cost of operation borne by them while remaining wholly impotent in the ordinary every-day matter of government unless it deliberately violated the property rights or took away the property rights belonging to the plaintiffs and others similarly situated all of which make such incorporation unjust and inequitable."

A point of beginning is to determine the public or private character of the roads, parks, and lake in the proposed area of incorporation.

It is possible to dedicate streets and roads by a recorded plat. Sec. 3589 et seq, GC.

But, to consummate a dedication the plat must contain a plain and unambiguous intent to dedicate the streets and roads for public use.

The aforementioned plat inscriptions do use the word dedicate; and the word dedicate usually means a grant of an interest in land for public use. Fieder v. Terstiege, 56 NYS 2d. 837.

But it is impossible to construe these plat inscriptions as expressing an intent to set aside the roads, parks, and lake for general public use. On the contrary there is evidenced a clear intent to limit the use of these areas to lot owners. The situation resembles People v. Ricketts, 248 Ill. 428, 94 N. E. 71, which held that irrespective of the use of the word "dedicate" the intent was to limit the use of certain play and park areas to abutting land owners.

This intent to exclude the general public from the roads, parks, and lake is reaffirmed by the deed of grant from Kiwanis Lake Realty Company to the original Trustees.

So far therefore as the plats and deed are concerned, no dedication for public use of the road, parks, and lake was thereby effected.

However, in addition to statutory dedication by plat, and dedication by deed, dedication may also take place through acts and conduct (common law dedication). **Hicksville v. Lantz, 153 Oh St, 421.**

But whether or not a common law dedication has occurred during the thirty years the Kiwanis Lake Sub-divisions have been in existence need not now be considered and will not be decided, in the absence of any present issue or presented evidence concerning such question.

On the record in this case it is concluded that the roads, parks, and lake have not been dedicated for public use.

Now if there are no public roads, no public parks, no public lands in the territory, is incorporation of the territory thereby thwarted? This is the pivotal question.

To answer this question it is essential to examine §3517 GC, under which this incorporation is sought. Its pertinent part provides that:

"The inhabitants of **any territory laid off into village lots** a plat of which territory has been acknowledged and recorded as is provided with respect to deeds, or the inhabitants of any territory which has been laid off into such lots and surveyed and platted by any engineer or surveyor who certified thereon, under oath, to its correctness, and which is recorded as is provided with respect to deeds * * * may obtain the organization of a village in the manner provided in this title." (Emphasis ours.)

It is apparent that this section contains no provision requiring public streets as a condition of incorporation. In fact only two conditions need be satisfied to obtain organization of a village. The first is, that the territory be laid off into village lots. The second is, that the territory either be platted and recorded or surveyed and platted by an engineer and surveyor whose certification is recorded.

Now what is the meaning of the requirement that the territory be "laid off into village lots"?

The term "village" has no definitely prescribed meaning. Webster's New International Dictionary, Second Edition, Unabridged, defines "village" as "any small aggregation of houses in the country, being in general less in number than in a town or city and more than in a hamlet." 2. Bouv. Law Dict. Rawle's Third Revision, p 3401, defines the word as, "any small assemblage of houses for dwellings or business, or both, in the country, whether they are situated upon regularly laid out streets and alleys, or not."

The recorded plat of Kiwanis Lake Sub-divisions 1 and 2 reveals that the Sub-divisions comprise a compact territory laid off into some 1146 lots, fronting on drives, and contiguously located except where separated by the areas set apart for the lake, the parks, and the roads. The lots vary in frontage from 30 to 75 feet and in depth from 70 to 210 feet. From the fact that 405 persons reside there the year around, and 183 reside there during the summer, it may reasonably be inferred that dwellings have been constructed and are occupied.

Obviously all the requisites of a village are present.

The Kiwanis Lake Sub-divisions 1 and 2 accordingly constitute a territory which has been "laid off into village lots," thus satisfying the first condition of §3517 GC.

The territory of the proposed incorporation is co-extensive with Sub-divisions 1 and 2, for each of which a plat has been made and recorded. Thus the second condition of §3517 GC has also been met.

The territory of Kiwanis Lake Sub-divisions 1 and 2 thus complies with all requirements of §3517 GC under which incorporation is here sought.

Under this statute a territory may therefore be incorporated even though its roads and streets have not been dedicated to public use.

This conclusion is in harmony with the only relevant authority which has been discovered. That is the case of State v. Church 158 S. W., 2d, 215, decided February 3rd and 17th, 1942 by the St. Louis County, Missouri, Court of Appeals. It was an appeal in a quo warranto action which challenged the right of the trustees of the village of Crystal Lake Park to hold their offices.

The territory involved was a 60 acre tract in St. Louis County, Missouri. Part of this land had been platted in 1922 into lots. The streets in the tract were ALL PRIVATE, constructed by the platters. Eleven acres of the tract contained an artificial lake, and nineteen acres contained a golf club house, swimming pool, restaurant, locker houses and two holes of a golf course, the other sixteen holes being on a tract to the west of the 60 acres.

By the time of the trial below seventy five dwellings had been constructed and were being occupied as residences.

In Missouri the county court is the agency which hears and determines petitions for incorporation. The county court granted incorporation. Subsequently by quo warranto proceedings the platters who still owned 32½ acres of the 60 acre tract including eight or nine acres of the lake, a dozen

platted lots, and the rest in vacant land, challenged the legality of the incorporation.

Petitioners claimed that the county court had exceeded its jurisdiction in that

1. "No village or town of Crystal Lake Park ever existed as contemplated by §7091 R. S. Mo. 1929, but said 60 acre tract of land was a privately owned subdivision without commons, public streets, or taxable inhabitants within the meaning of said section of the statute * * *;

2. "That said order deprives relators of their right to operate, manage, and control their property, in violation of Section 20 Art. 2 of the Missouri Constitution, and the due process clauses of the State and Federal Constitutions."

In their appeal from the adverse ruling of the circuit court which had refused to grant relief, petitioners contended

"that the county court of St. Louis County was without jurisdiction to entertain and rule on the petition for incorporation of the village of Crystal Lake Park, because no such village ever existed within the meaning of Section 7091, R. S. Mo. 1929, as the streets in the platted subdivision were not dedicated to public use."

Thus the issue of the necessity of publicly dedicated streets as a condition of incorporation was squarely raised.

The St. Louis Court of Appeals rejected petitioners argument in these words:

"But, appellants are in error in their contention that because the streets in the platted area were not dedicated to the public use, the community known as Crystal Lake Park was a village within the meaning of the statute. The statute does not define the word village, so that it should be given its ordinary and usual meaning (thereupon the court gave the definitions from Webster's and Bouvier's quoted earlier in this memorandum, and also cited Illinois Central R. R. Co., v. Williams, 27 Ill., 48 and other authorities)."

Accordingly the court concluded that the community known as Crystal Lake Park was a village within the meaning of the Missouri incorporation statute.

It is important to note that the Missouri incorporation statute requires the existence of a village to justify incorporation; whereas Ohio only requires that the territory be "laid off into village lots."

If a village existed under the facts of the Church case, supra, the territory in the Kiwanis Lake Sub-divisions is "laid off into village lots."

The Ohio incorporation statute, though not necessitating the existence of publicly dedicated streets as a condition of in-

corporation does not by the act of incorporation convert private streets into publicly dedicated streets. Ways, private when they are brought within the limits of a municipal corporation, remain so until dedicated. **Bonebrake v. Columbus,** O. N. P. (NS), 41, affirmed without opinion, **81 Oh St, 545.**

But because the roads are not automatically dedicated by the act of incorporating this territory into the Village of Kiwanis Lake, this circumstance nevertheless does not prevent incorporation.

True enough, the new village, through its elected council, cannot improve the roads and assess the lot owners for the improvements as long as the roads are privately owned or not publicly dedicated. But that condition need not be a static one.

The significant point is that upon incorporation power immediately vests in the village to convert the private ways to public ways. The improvements may then follow.

The village through its elected council is fully empowered to appropriate whatever land it needs for streets by employing available powers of appropriation. **Secs. 3715, 3677 et seq, GC.**

If the power to provide public ways exists, as it clearly does, the fact that upon incorporation there are no public ways is irrelevant as a ground for challenging the act of incorporation. Moreover, whatever rights in the roads are now possessed by the plaintiffs as lot owners and trustees would be adequately respected and compensated for in appropriation proceedings should they become necessary. In such proceedings the actual value of these respective interests, plus any damage to the lots, would be established and paid for.

It should be said however that it is difficult to conceive how either the holder of the legal title or beneficial title to the roads would be able to prove any actual or special damages flowing from the conversion of the use of the roads from one enjoyed by all the lot owners to one enjoyed by the public. Such a conversion of use would hardly interrupt or impair the individual use of the roads by lot owner. If the lot owners suffer no demonstrable damage then the trustees would suffer none.

Moreover it seems self-evident that any monetary assessment of damages which might be made would produce an illusionary gain for the lot owner, for any award allowed for appropriation of the lot owners' beneficial use in the roads, for damage to their lots, and for the costs of the appropriation would necessarily be assessed against all the lots on a

frontage basis. Hence each lot owner would wind up paying the damages allowed for his lot plus his proportionate share of the costs of appropriation.

Petitioners contend that incorporation is futile because there are no public streets which may be subject to municipal powers. It has been seen that such a condition is only a present one which may be altered whenever the village asserts its power of appropriation over the streets or the streets become dedicated. Petitioners argument therefore must fail.

However, it may not be necessary to resort to appropriation in order to convert the roads to public use. Trustees may dedicate trust lands to public use if that dedication is not inconsistent with the trust. And it has been said with reference to a trust for a school plot indentured to last as long "as grass grows and water runs" that it cannot be asserted as a principle of law, that the devotion of part of a school plot to the purpose of a highway, is inconsistent with the trusts impressed on it. Prudden v. Lindsley, 29 N. J., Eq. 617, at 617. Albers, et al v. Acme Paving & Crusher Co., et al., 194 S. W. 61, at 71, holds likewise with reference to church lands dedicated to a public highway.

And in any event the trustees, with the consent of the lot owners, could dedicate the roads to public use. Bogert Trusts and Trustees, Section 941, Vol. 4, Part 2, Pages 134, 135.

Lot owners realistically faced with the possible alternative of costlier appropriation will undoubtedly all assent to dedication.

As to the parks and the lake they may be dealt with separately from the roads and in several ways. All or any part of the parks and lake may be continued as is, with the use reserved for the lot owners. Or all or any part of the parks and lake may be appropriated by the village as public property. Or the trustees may dedicate all or any part of the parks and lake to public use with the consent of the lot owners.

Everything considered, incorporation of the Village of Kiwanis Lake will neither trespass upon or impair any right which plaintiffs have either as trustee or lot owners.

Incorporation of the village complies with and conforms to all statutory requirements.

It is not established that the incorporation of this Village will either wrongly, unjustly or inequitably affect any right or interest of the plaintiffs.

Injunctive relief will be denied.

Defendant may draw an appropriate entry.