No. 20,383.

STANLEY HAILPERN *v.* J. ROBERT DRYDEN, ET AL.

(389 P. [2d] 590)

Decided February 24, 1964.

Messrs. GIRSCH & ROTTMAN, for plaintiff in error.

Mr. ANTHONY V. ZARLENGO, for defendants in error.

*En Banc.*

MR. CHIEF JUSTICE McWILLIAMS delivered the opinion of the Court.

PURSUANT to written contract J. Robert Dryden and his wife, Nancy Marie Dryden, on April 22, 1960, purchased a dry cleaning establishment known as Stanley's Cleaners from Stanley Hailpern for $13,500, the Drydens making a down payment of $3,500 and executing a promissory note for the balance due under the contract.

On May 2, 1961, the Drydens brought an action against Hailpern seeking to rescind the aforementioned contract on the ground that "there was a mutual mistake between the parties," the Drydens offering to return the dry cleaning business to Hailpern and seeking return of all monies paid by them to Hailpern under the contract.

In his answer Hailpern denied any "mutual mistake" and interposed a counterclaim for the balance then due on the promissory note.

Upon trial the court held that "the parties were mutually mistaken as to when a proposed shopping center would be available" and accordingly entered judgment cancelling the purchase and sales contract, dismissing the aforementioned counterclaim and ordering that the Drydens have judgment against Hailpern for $6305. By writ of error Hailpern seeks reversal of the judgment thus entered.

Since about 1952 Hailpern had been operating a dry cleaning business at 324 South Knox Court in Denver and the Drydens in response to a newspaper advertisement first contacted Hailpern in early April 1960 regarding the possible purchase by them of this business. As of this time Hailpern was the lessee of space in a proposed shopping center to be constructed some two to three miles from the Knox Court location and for which Hailpern had paid some $600 as advance rental. Hailpern advised the Drydens that he held the aforementioned lease and he and Robert Dryden viewed the site of the proposed shopping center, which was then only vacant land. Robert Dryden thereafter spent several weeks observing and generally sizing up this dry cleaning business and on April 22, 1960, the parties entered into the

written contract calling for the purchase and sale thereof.

By the terms of this contract it was agreed "that purchasers shall buy from seller and seller shall sell to purchasers the fixtures and equipment, a list of which is annexed hereto and made a part hereof, the supplies on hand, the goodwill and trade name of the business heretofore mentioned [cleaning establishment owned and operated by seller known as Stanley's Cleaners located at 324 South Knox Court, Denver, Colorado], at and for a total purchase price of thirteen thousand five hundred dollars."

The only reference in the contract to the lease then held by Hailpern in the unbuilt shopping center was as follows:

"5. Seller is lessee under a lease of approximately 1200 square feet in the Sheridan Southwest Center, dated June 23, 1959, upon which $600.00 of advance rental has been paid to lessor. It was contemplated that purchaser would reimburse seller the $600 advance rental and take an assignment thereof, subject to the approval of lessor . . . Purchasers are unable to pay the $600 at this time . . . it is agreed that when the premises are ready for occupancy upon approval of lessor, seller will transfer and assign said lease upon payment to him of the $600 advance rental . . ."

Later on that same date, i.e. April 22, 1960, the parties entered into a supplemental agreement which related exclusively to Hailpern's lease in the not yet constructed shopping center. This supplemental agreement provided, among other things, as follows:

". . . Seller shall forthwith apply to the owners of the Sheridan Southwest Center for an assignment to purchasers of the lease therein mentioned. When such assignment shall have been consented to by the owners thereof, purchasers shall pay unto seller the sum of $600 . . . and the lease shall thereupon be assigned . . ."

"In the event consent of the landlord to the assignment herein mentioned is not obtained within thirty (30) days

from the date hereof, purchasers shall have the option of returning to seller the assets purchased hereunder and seller shall return the purchasers the amounts paid to seller . . ."

The Drydens went into possession of Stanley's Cleaners on April 22, 1960, and shortly thereafter Hailpern, having secured the written consent of the lessor to the proposed assignment of the lease to the Drydens, then proceeded to assign the same to the Drydens and in turn was reimbursed by the Drydens for advance rentals in the amount of $600.

The present controversy stems from the fact that the proposed Sheridan Southwest Center never came into being. The evidence is undisputed that as of April 22, 1960, both the Drydens and Hailpern honestly believed that the shopping center was going to be constructed, though all knew that as of that time ground had not even been broken.

In about August 1960 the Drydens for the first time sought out the promoter of the proposed center to determine the reason for the delay in construction. They were informed that "money was then tight" and that accordingly construction of the center was being postponed. In December 1960 the Drydens were similarly advised once again that "money was still tight." Finally, in March 1961, the Drydens came to the conclusion that the shopping center was never going to be built and shortly thereafter they stopped making payments on their note and informed Hailpern of their intention to rescind the contract. Hailpern was generally unsympathetic to the Drydens' plight and accordingly the Drydens next instituted the present action seeking rescission of the purchase and sale contract and cancellation of their promissory note, plus return of all moneys paid by them to Hailpern.

As above noted, the trial court found a "mutual mistake" and granted the Drydens the relief prayed for. There is no dispute of any material fact and hence the

issue to be resolved is purely legal in nature. Succinctly stated it is: was there such a mutual mistake as to justify rescission? We conclude that there was not and the trial court erred in holding to the contrary.

Before bringing the facts of the instant case under judicial scrutiny, it is deemed helpful to recognize certain general rules touching upon the right to rescind a contract on the ground of mutual mistake. In 9 Am. Jur. Cancelation of Instruments, § 32, p. 377, it is stated:

"The jurisdiction of equity to decree the cancelation of an instrument because at the time of its execution the parties, or even one of them, labored under a mistake of fact, provided that such mistake is material to the transaction and affects the substance thereof, rather than a mere incident or the inducement for entering into it, is well recognized and frequently invoked, especially if an element of fraud is present, or a confidential relationship exists."

At this point it is to be observed that in the instant case there is no suggestion that Hailpern was in anywise guilty of any fraud or misrepresentation, nor was there any confidential relationship between the Drydens and Hailpern. Rather the Drydens' position is that they and Hailpern entertained a mistaken belief that a shopping center would be constructed at some time in the future and that this "mistake" in and of itself entitles them to rescission. Hence, the prescise issue to be resolved narrows to a determination as to whether such a "mistake" is a *mistake of fact.*

The *Restatement of the Law of Contracts,* § 500 defines "mistake," as that word is used in the field of contracts, as "a state of mind that is not in accord with the facts." In *McNeely v. Philadelphia Nat. Bank,* 314 Pa. 334, 172 A. 111, an action in assumpsit to recover money paid under an alleged mutual mistake of fact, appears the following:

"A mutual mistake of fact is a clear impression in the minds of the parties as to the existence of a material fact,

sufficient in importance to influence and govern a man of ordinary intelligence, and on which both parties relied and acted, *which fact did not exist.* To show mistake, the fact contrary to the belief of the parties must, not only be made to appear definitely, but must be shown to have existed at the time the parties had a different impression. *There can be no mutual mistake as to a fact to come into being in the future."* (Emphasis supplied.)

The foregoing definition enunciated by the Supreme Court of Pennsylvania was followed in *KoEune v. State Bank of Schuylkill Haven,* 44 Schuylkill Legal Record 81, where the issue was whether a contract was entered into under a mutual mistake of fact.

▉ Finally, 12 C.J.S. Cancellation of Instruments, § 27, p. 978 states that "where an alleged mistake of fact is but a contingency which the parties foresaw was liable to arise from their want of personal knowledge, such contingency forming a basis, in part, of the contract, it is not a ground for rescission."

▉ Applying these general principles to the facts of the instant case, we conclude that there simply was no mutual mistake as to any fact in existence as of the date of the contract, i.e. there was no "state of mind not in accord with the facts" as such existed on April 22, 1960. The "mistake," if such it be, did not relate to an existing fact but only to a future contingency. We accept as true Robert Dryden's testimony that he would not have purchased the business but for his expectation that he could eventually relocate in a shopping center as then unbuilt. But this is no such mistake of fact as to justify the relief of rescission.

The only authority urged by the Drydens in support of their alleged right to rescission is *Carpenter v. Hill,* 131 Colo. 553, 283 P. (2d) 963. True it was stated there "that no principle is better settled than the equitable doctrine that an agreement founded in a *mutual mistake of facts* that are the very basis of the contract, will void the contract." (Emphasis supplied.)

However, in *Carpenter v. Hill,* supra, the mistake was truly one of an existing fact, and one not relating to a misapprehension as to what the future might bring. There the "seller" of encumbered realty in good faith, though mistakenly, advised the "purchaser" that under the terms of an existing written contract the "loan" on the property was "to be paid off by crop payments" and "if there was no fruit crop the payment would be carried over." Both the "seller" and the "purchaser" then entered into a contract for the purchase and sale of this realty on the premise that the existing mortgage loan on the property could be paid in the manner just outlined. It later developed that both were "mistaken," the truth of the matter being that under the terms of the mortgage loan the entire unpaid balance fell due on a date certain and there was no provision for repayment out of crop monies. Clearly, this was a mistake of fact, both parties to the contract possessing a "state of mind . . . not in accord with the facts."

The judgment is reversed and the cause remanded with directions to dismiss the Drydens' complaint and enter judgment for Hailpern on his counterclaim in such amount as is determined to be presently due and owing on the Drydens' promissory note.