SNYDER et al., Appellants,

v.

MONROE TOWNSHIP TRUSTEES et al., Appellees.

[Cite as *Snyder v. Monroe Twp. Trustees* (1996), 110 Ohio App.3d 443.]

Court of Appeals of Ohio,
Second District, Miami County.

No. 95–CA–44.

Decided April 19, 1996.

444

*Huffman, Landis, Weaks & Wist Co., L.P.A.,* and *Stanley L. Trissell,* for appellants.

*Sunderland & Moore, Joseph P. Moore* and *Paul M. Courtney,* for appellee Tipp City.

FREDERICK N. YOUNG, Judge.

Appellants Donald and Deborah Snyder appeal from the Miami County Common Pleas Court's judgment finding that appellee Tipp City holds a valid easement appurtenant across their property.

The Snyders advance four assignments of error. First, they claim that the trial court erred by determining that a valid easement exists. Second, they

contend that the trial court erred by failing to find the easement extinguished by abandonment. Third, the Snyders argue that the trial court erred by constructively modifying the original deed granting the easement. Finally, they assert that the trial court erred by finding that the easement currently benefits the owner of the dominant estate.

The Snyders' appeal stems from their attempt to prevent area residents from walking across their property to enter a four-acre park adjoining their land. The Snyders reside on lot fifty-four of Woodlawn Village in Tipp City, Ohio. The park, which sits behind the Snyders' land, is used by residents of Woodlawn Village and can be entered from other areas. However, the appellees, the city of Tipp City and the Monroe Township Trustees, contend that a ten-foot-wide easement encumbers the Snyders' property and provides convenient access to the park. Conversely, the Snyders claim that the alleged easement either was void at the time of its attempted creation or has been abandoned.

The facts underlying the present appeal are relatively simple and undisputed. The Evanston Land Company originally owned all the land involved in this appeal. Evanston transferred undeveloped land abutting Woodlawn Village to the Tipp–Troy Development Company by warranty deed on May 14, 1976. This land later became the park. The Evanston Land Company then conveyed lot fifty-four to Ronald and Paula English by warranty deed on December 29, 1976.

Thereafter, the Tipp–Troy Development Company revised its preliminary plans for Woodlawn Village on April 24, 1978, proposing a ten-foot walkway across lot fifty-four leading from Heathwood Drive to an area designated as "PARK 4.3 AC" on the company's plans. The Englishes subsequently agreed to convey the easement, and they executed a deed in late 1978 granting an "easement [across lot fifty-four] for purposes of ingress and egress to the proposed park area * * *." The deed granted the easement to the Monroe Township Trustees, its successors, and assigns forever. The deed was properly recorded on November 7, 1978, and described the easement as "10 feet taken by parallel lines along and adjacent to the south line of Lot Number FIFTY–FOUR (54)."

Ultimately, the Tipp–Troy Development Company conveyed its fee simple interest in the park area to the Millavy Development Company by warranty deed on September 11, 1989. The city of Tipp City subsequently annexed lot fifty-four and the park area on May 17, 1990. The Snyders then obtained their fee simple interest in lot fifty-four by warranty deed on June 28, 1991. Thereafter, Tipp City obtained a fee simple interest in the park area from the Millstein (formerly Millavy) Development Company on May 26, 1992.

Following these transactions, the Snyders initiated the present declaratory judgment action on July 7, 1994, seeking to quiet title to their property. Specifically, they sought a declaration that the easement was void at its inception

or, alternatively, that the easement had been extinguished through abandonment. The parties submitted the case to the trial court based upon a stipulated pretrial order in which the parties admitted all relevant facts and agreed upon the issues of law for the trial court to resolve. The trial court subsequently rejected the Snyders' arguments and entered a judgment in the appellees' favor.

In its July 25, 1995 judgment entry, the trial court agreed with the Snyders' claim that the easement was an easement appurtenant rather than an easement in gross. The court also recognized that the common law requires the beneficiary of an easement appurtenant to own the benefitted land, typically referred to as the "dominant" estate. Moreover, the trial court acknowledged that the original grantees of the easement, the Monroe Township Trustees, never have owned the park property. Instead, as the trial court noted, when the Englishes granted the easement in 1978, the Tipp–Troy Development Company owned the park area. Nevertheless, the trial court reasoned:

"By granting the easement to the trustees, the Englishes clearly showed their intention to have the easement benefit the residents of Woodlawn Village. It is illogical to argue that the Englishes intended the easement to benefit only the men and women who serve as Monroe Township Trustees. The Englishes apparently anticipated the trustees taking ownership of the park and letting the village residents use the easement. This scenario might have occurred except that, in the meantime, the area was annexed to Tipp City."

Given these circumstances, the trial court relied upon the original parties' intention and declared the easement valid despite the Monroe Township Trustees' failure ever to own the dominant estate. In support of its decision, the trial court explained that "[h]ere, the housing developers, the Monroe Township Trustees, Tipp City, Mr. and Mrs. English, and every other landowner intended an easement across Lot 54 to benefit the park area and to grant village residents access to the park. The fact that [the] English[es] mistakenly granted the easement to the wrong party does not override the clear intentions of the parties." The trial court also rejected the Snyders' abandonment argument, finding no evidence that the Monroe Township trustees or Tipp City "ever affirmatively show[ed] an intention to abandon the easement."

The trial court then "constructively modified" the original deed granting the easement. In light of the original parties' intentions, the trial court modified the deed to identify the Tipp–Troy Development Company as benefitting from the easement rather than the Monroe Township Trustees. As a result of this constructive modification, the trial court noted that the easement properly transferred to each subsequent owner of the park area and now rests with Tipp City, the present owner. Consequently, the trial court concluded that Tipp City

holds a valid easement across the Snyders' property and that the Monroe Township Trustees possess no interest in the easement.

The Snyders then filed this timely appeal in which they raise four assignments of error.

## I

"The trial court erred by finding that a valid easement exists across appellants' property."

In this assignment of error, the Snyders contend that the trial court erred when it relied upon the original parties' intentions and found a valid easement across lot fifty-four. The Snyders reiterate their argument that (1) the easement was an easement appurtenant, (2) the grantee of an easement appurtenant must own the dominant estate, and (3) the Monroe Township trustees never have owned the park property. Under these circumstances, the Snyders claim that the easement was void *ab initio.*

As we noted above, the trial court reached a contrary result, finding that " 'if the intention of the parties is apparent from an examination of the deed "from its four corners," it will be given effect regardless of the technical rules of construction.' " In support of its holding, the trial court cited *Little Miami, Inc. v. Wisecup* (1984), 13 Ohio App.3d 239, 13 OBR 292, 468 N.E.2d 935, and *Hinman v. Barnes* (1946), 146 Ohio St. 497, 32 O.O. 564, 66 N.E.2d 911.

The Hamilton County Court of Appeals in *Little Miami* considered whether a deed conveyed an indefeasible fee simple interest in certain property or only an easement. In resolving the dispute, the court noted its "duty to examine the terms of the deed in the instant case with an eye toward giving effect to the intention of the parties as it is expressed in the four corners of the instrument." *Id.* at 241, 13 OBR at 294, 468 N.E.2d at 937. Similarly, the Ohio Supreme Court in *Hinman* also considered whether a deed conveyed an easement or a fee estate. The court concluded that the deed in question conveyed only an easement and cited with approval a Kentucky case that recognized " 'the modern and prevalent rule for determining the estate conveyed by a deed,' which rule is 'that if the intention of the parties is apparent from an examination of the deed "from its four corners," it will be given effect regardless of technical rules of construction.' " *Hinman, supra,* 146 Ohio St. at 508, 32 O.O. at 569, 66 N.E.2d at 916, quoting *Sherman v. Petroleum Exploration* (1939), 280 Ky. 105, 132 S.W.2d 768.

In *Sherman,* upon which the *Hinman* court relied, the court resolved a dispute concerning the property interest granted by a deed. The appellants argued that the deed in question conveyed a fee simple title, and the appellees contended that the deed conveyed only an easement. After reviewing the deed, the court noted

an apparent conflict between the deed's habendum and the deed's granting clause. The court then explained:

"[I]f the apparent inconsistency between the habendum and the granting clause be regarded as an actual repugnancy and it can not be reconciled, then resort might be had to the rule of construction that the habendum of a deed must yield to the granting clause. * * * However, that recourse is to be had only as a last resort, for the modern and prevalent rule for determining the estate conveyed by a deed with inconsistent clauses has as its cardinal principle the proposition that if the intention of the parties is apparent from an examination of the deed 'from its four corners,' it will be given effect regardless of technical rules of construction." *Sherman, supra,* 280 Ky. at 110, 132 S.W.2d at 771.

Consistent with the Ohio Supreme Court's ruling in *Hinman,* this state's courts have considered the intentions of the parties to a deed to determine (1) whether a deed conveys an easement or a fee interest (*Little Miami, supra* ); (2) whether a deed conveys an easement appurtenant or an easement in gross (*DeShon v. Parker* [1974], 49 Ohio App.2d 366, 367, 3 O.O.3d 430, 431, 361 N.E.2d 457, 458); (3) whether a valid easement in gross is apportionable (*Jolliff v. Hardin Cable Television Co.* [1971], 26 Ohio St.2d 103, 106, 55 O.O.2d 203, 204–205, 269 N.E.2d 588, 590); (4) the size of a conveyed easement (*Columbia Gas Trans. Corp. v. Bennett* [1990], 71 Ohio App.3d 307, 318, 594 N.E.2d 1, 8); (5) the duration of a conveyed easement (*Malcuit v. Equity Oil & Gas Funds, Inc.* [1992], 81 Ohio App.3d 236, 240, 610 N.E.2d 1044, 1047); and (6) the location of a conveyed easement (*Amsbary v. Little* [Mar. 11, 1991], Washington App. No. 90 CA 16, unreported, 1991 WL 37916).

In each of these cases, however, one party validly conveyed something to the other party. The court simply interpreted the language conveying the property interest, in light of the parties' intentions, to determine precisely what interest had been conveyed. In such cases, the parties' intentions may override "technical rules of construction" and help the court to define the exact nature, scope, location, or extent of the conveyance. Indeed, as the foregoing cases illustrate, the parties' intentions are paramount when a court attempts to construe existing language in a deed.

Consequently, in the present case the trial court properly considered the parties' intentions to determine *what* property interest Ronald and Paula English conveyed to the Monroe Township Trustees in 1978. The trial court determined that the Englishes conveyed an easement to the trustees to ensure convenient public access to the park. Thus, the trial court reasoned that the easement was appurtenant, benefitting the park property and not the individual trustees. As in the foregoing cases, the trial court properly considered the Englishes' intentions

and reached this conclusion despite the deed's failure to classify the easement as either appurtenant or in gross.

More important, however, the trial court cited *Little Miami* and *Hinman, supra,* in support of its decision to interpret the deed as naming the Tipp–Troy Development Company, rather than the Monroe Township Trustees, as grantee in the Englishes' 1978 easement conveyance. As we noted above, the trial court relied upon the intentions of the parties rather than "technical rules of construction" and reasoned:

"When Mr. and Mrs. English first granted the easement, they should have named the Tipp–Troy Development Company as the beneficiary. * * * The Englishes apparently anticipated the trustees taking ownership of the park and letting the village residents use the easement. This scenario might have occurred except that, in the meantime, the area was annexed to Tipp City. * * * The fact that [the] English[es] mistakenly granted the easement to the wrong party does not override the clear intention of the parties."

Based upon this reasoning, and the cases cited above, the trial court "constructively modified" the original deed granting the easement, finding that it benefitted the Tipp–Troy Development Company rather than the Monroe Township Trustees. Consequently, the trial court held that the easement appurtenant ran to subsequent owners of the park property, ultimately falling under the control of Tipp City, the park's current owner.

We disagree with the trial court's analysis, and we find its reliance upon *Little Miami* and *Hinman* misplaced. As we noted above, *Little Miami* and *Hinman* involved the courts' interpretation and construction of *existing* language in a deed. Conversely, in the present case the trial court, in effect, *changed* language in the deed, replacing the Monroe Township Trustees with the Tipp–Troy Development Company. In our view, the trial court's action implicates rules of easement creation and rules governing the reformation of instruments rather than the interpretation of instruments.

■ Traditional tenets of property law provide that an easement appurtenant "arises only when its holder owns a dominant estate at the time of the creation of the easement." Bruce & Ely, The Law of Easements and Licenses in Land (Rev. Ed.1995) 2–8, Section 2.01[4]. Despite this rule, we recognize that several jurisdictions have allowed a party to create an easement appurtenant to benefit a grantee upon the grantee's future acquisition of the subject property. *Lindenmuth v. Safe Harbor Water Power Corp.* (1932), 309 Pa. 58, 65–67, 163 A. 159, 161–162; *Kalinowski v. Jacobowski* (1909), 52 Wash. 359, 366, 100 P. 852, 855; *Wright v. Best* (1942), 19 Cal.2d 368, 384, 121 P.2d 702, 712; *Wells v. North East Coal Co.* (1934), 255 Ky. 63, 67, 72 S.W.2d 745, 747; *Rosenbloom v. Grossman*

(Mo.1961), 351 S.W.2d 735, 737. Even in these jurisdictions, however, "the easement appurtenant becomes enforceable only when the specified dominant tenement is obtained." Bruce & Ely, The Law of Easements and Licenses in Land, *supra*, at 2–8 and 2–9, Section 2.01[4], citing *Wells* and *Rosenbloom, supra*.

Consequently, in the present case we need not ponder the wisdom of a rule providing that an easement appurtenant may be suspended in abeyance until the grantee acquires the dominant estate. Although the foregoing jurisdictions have adopted that rule, the present facts do not compel this court to make a similar choice. Assuming, *arguendo*, that the Englishes could grant the Monroe Township Trustees an easement appurtenant in 1978 to become enforceable upon the trustees' acquisition of the park, the conveyance still fails because the trustees *never* obtained the property.

In fact, in their stipulated pretrial order, the parties admit that "[t]he Monroe Township Trustees have never had available to them the area in question for development of a park * * *." Additionally, the parties agree that "[h]ad the 'park' area in question not been annexed by the City of Tipp City, Ohio, the Monroe Township Trustees would have accepted responsibility for its control and maintenance, would have accepted a conveyance for the area for park purposes, and would have developed the park area into a park with the traditional and customary amenities of a park * * *." Finally, the parties stipulate that "[t]he City of Tipp City, Ohio has never acquired any interest in the [e]asement by written conveyance in any form or manner whatsoever."

■ Given these circumstances, we find the original conveyance from the Englishes to the Monroe Township Trustees unenforceable. The parties admit that the Monroe Township Trustees *never* acquired any interest in the park property, which constituted the necessary dominant estate. Despite the trustees' contention that they *would have* accepted responsibility for the park had it not been annexed by Tipp City, the fact remains that Tipp City, not the trustees, actually acquired the property.

Tipp City attempts to overcome this conclusion by arguing that when the Englishes granted the easement in 1978, roads in the area had been dedicated to public use and were under the Monroe Township Trustees' control. One of those roads, Heathwood Drive, abutted the Englishes' lot fifty-four. Consequently, Tipp City contends, as it did before the trial court, that "the grantee Monroe Township Trustees held an estate appurtenant to and abutting the easement at the time it was conveyed."

Even if the trustees held an interest in the road abutting the easement, however, we find this fact irrelevant. The park, not Heathwood Drive, constituted the dominant estate benefitting from the Englishes' conveyance. Thus, the

only relevant parcels of property were lot fifty-four, the servient estate, and the park area, the dominant estate. As we explained above, the Monroe Township Trustees have obtained no interest in either of these properties, and we deem their ownership or control of any other land inconsequential.

■ Therefore, the original conveyance from the Englishes to the Monroe Township Trustees remains unenforceable. Consequently, we next must consider whether the trial court erred by constructively modifying the deed and, in effect, naming the Tipp–Troy Development Company as the grantee rather than the trustees. This question implicates legal principles governing the reformation of instruments. As we recently explained, "[r]eformation of an instrument is an equitable remedy whereby a court modifies an instrument which, due to mutual mistake on the part of the original parties to the instrument, does not evince the actual intention of those parties." *Carman v. Entner* (Feb. 2, 1994), Montgomery App. No. 13978, unreported, 1994 WL 28633.

In the present case, the trial court "constructively modified" the original deed because the Englishes "mistakenly granted the easement to the wrong party," thereby defeating their true intentions. The trial court noted that the Englishes made the conveyance in apparent anticipation of the Monroe Township Trustees acquiring the park property. Similarly, the trustees apparently accepted the conveyance based upon an identical belief that they ultimately would control the park.

■ Thus, the critical inquiry is whether the parties' mistaken belief that the trustees ultimately would acquire the park constituted a "mutual mistake" sufficient to justify reforming the deed. After a thorough review of the record and an examination of relevant legal authorities, we answer this question negatively.

■ At the outset, we recognize that "[a] court may reform the grantee provision of a deed if the provision is incorrect * * *." *Harvey v. Harvey* (1993), 91 Ohio App.3d 404, 411, 632 N.E.2d 956, 960. In the present case, however, we find no evidence that the deed provision naming the Monroe Township Trustees as grantees incorrectly represents the original parties' intentions. In fact, as the trial court recognized, the Englishes *purposely* conveyed the easement to the Monroe Township Trustees. The Englishes and the trustees erred only in their belief that a future contingency would occur. Specifically, each party mistakenly believed that the trustees, rather than Tipp City, eventually would acquire the park property.

■ This "mutual mistake" concerning the anticipated occurrence of a future event will not justify reformation of an instrument. "So far as reformation of an instrument is concerned, a mistake exists only when the instrument, in its terms

or legal effect, is different from what the parties believed it to be *at the time of its execution.*" (Emphasis added.) 13 Ohio Jurisprudence 3d (1995) 536, Cancellation and Reformation of Instruments, Section 81. As one jurisdiction has noted, "[t]here can be no mutual mistake as to a fact to come into being in the future." *Hailpern v. Dryden* (1964), 154 Colo. 231, 236, 389 P.2d 590, 593.

In *Hailpern,* the court refused to rescind a contract for the purchase of a dry cleaning establishment despite the plaintiff's claim that the parties entered into the agreement with the mutually mistaken belief that a shopping center soon would be built nearby. Rejecting the plaintiff's claim, the court noted:

"[T]here simply was no mutual mistake as to any fact in existence as of the date of the contract, i.e. there was no 'state of mind not in accord with the facts' as such existed on April 22, 1960 [the date the parties executed the contract]. The 'mistake,' if such it be, did not relate to an existing fact but only to a future contingency. We accept as true Robert Dryden's testimony that he would not have purchased the business but for his expectation that he could eventually relocate in a shopping center as then unbuilt. But this is no such mistake of fact as to justify the relief of rescission." *Id.* at 236, 389 P.2d at 593. See, also, *Lenawee Cty. Bd. of Health v. Messerly* (1982), 417 Mich. 17, 331 N.W.2d 203, 207 (noting that to constitute a contractual mistake, a "belief which is found to be in error may not be, in substance, a prediction as to a future occurrence or nonoccurrence").

Similarly, in the present case we find no mutual mistake as to any fact in existence when the Englishes conveyed the easement to the Monroe Township Trustees. The parties did not act under the mistaken belief that the Monroe Township Trustees owned the park property at the time of the conveyance. Instead, they simply anticipated, incorrectly, that the trustees ultimately would acquire the land. Even accepting the claim that the Englishes would not have conveyed the easement to the Monroe Township Trustees had they known that Tipp City would acquire the park, this "mistake" relates to a future contingency rather than a then-existing fact.

As one Ohio appellate court has noted, "[i]n the first place there must be excluded from consideration mistakes as to matters which the contracting parties had in mind as possibilities and as to the existence of which they took the risk." *Cincinnati v. Fox* (1943), 71 Ohio App. 233, 242, 26 O.O. 61, 65, 38 Ohio Law Abs. 59, 66, 49 N.E.2d 69, 74, citing 5 Williston on Contracts (Rev.Ed.) 4332. Furthermore, in *Stewart v. Gordon* (1899), 60 Ohio St. 170, 53 N.E. 797, the Ohio Supreme Court stated:

"It is not competent for a court to determine the contract that should have been made, and decree its performance. Parties must be left to make their own

contracts. The most the court can do, in exercising the power of reformation, is to clearly ascertain what the contract was, and to correct such mutual errors as have intervened in carrying it into execution * * *." *Id.* at 176, 53 N.E. at 799.

In light of the foregoing authorities, we deem improper the trial court's reformation of the Englishes' deed based upon a perceived mutual mistake. The "mistake" related to the anticipated occurrence of a future event. Consequently, the trial court erred by determining what conveyance the Englishes *should* have made. Absent evidence that the Englishes inadvertently conveyed the easement to the Monroe Township Trustees, we hold that the trial court erred by modifying the deed.

 The Monroe Township Trustees raise an additional argument, however, claiming that the Englishes' conveyance, in effect, constituted a common-law dedication of the property for public use. "A dedication is a voluntary and intentional gift or donation of land, or of an easement or interest therein for some public use, made by the owner of the land, and accepted for such use, by or on behalf of the public." *Mastera v. Alliance* (1987), 43 Ohio App.3d 120, 120–121, 539 N.E.2d 1130, 1132; *Neeley v. Green* (1991), 73 Ohio App.3d 167, 170, 596 N.E.2d 1052, 1054. "Dedication of land * * * creates an easement for public use, if the dedication is at common law, or a determinable or qualified fee in a municipality or other public agency, in the case of a statutory dedication." *Trotwood Congregation of Jehovah's Witnesses, Dayton v. Measel* (Feb. 4, 1993), Montgomery App. No. 13471, unreported, 1993 WL 26776. To prove a common-law dedication of land, a plaintiff must establish (1) the property owner's intent to dedicate; (2) the property owner's actual offer to dedicate, evidenced by an unequivocal act; and (3) acceptance of the offer by or on behalf of the public. *Mastera, supra; Neeley, supra.*

 In the present case, we believe the Englishes' deed, which purports to convey an easement to the Monroe Township Trustees "for purposes of ingress and egress to the proposed park area," reasonably may be construed as evincing both an intent to dedicate the easement for public use and an actual offer to do so. Although the deed improperly names the Monroe Township Trustees as grantees, a dedication need not even involve a deed or other particular form of conveyance. *Seegar v. Harrison* (1874), 25 Ohio St. 14; *Sedlak v. Solon* (1995), 104 Ohio App.3d 170, 177, 661 N.E.2d 265, 269. In fact, the Ohio Supreme Court has declared that an owner's intention to dedicate land for public use may be implied from the circumstances. *Hicksville v. Lantz* (1950), 153 Ohio St. 421, 424, 41 O.O. 424, 425–426, 92 N.E.2d 270, 273.

Thus, the Englishes' deed, even if unenforceable to grant the trustees an easement appurtenant, may be interpreted under the circumstances as implicitly dedicating an easement for public use. See *Horsham Twp. v. Weiner* (1969), 435 Pa. 35, 44, 255 A.2d 126 (noting that "[s]ince the public receives only an easement in any land dedicated to its use by common law dedication, the deed of easement called for by Paragraph 24 would be equivalent to a deed of dedication"). The Englishes conveyed the easement to afford the public convenient access to the proposed park. Consequently, as the trial court recognized, they envisioned members of the public—rather than the Monroe Township Trustees personally—utilizing their formerly private property for a public purpose. In light of these circumstances, we believe that the deed adequately demonstrates the Englishes' intent to dedicate the easement and their offer to do so.

Nevertheless, before this court may find a valid dedication, the record also must reflect acceptance of the dedication. However, just as an offer to dedicate need not be included in a deed or other legal instrument, "no formal acceptance as a matter of record is necessary to effectuate a common-law dedication." *Neeley, supra,* 73 Ohio App.3d at 170, 596 N.E.2d at 1054. Moreover, this court noted in *Scott v. Snyder* (1943), 73 Ohio App. 424, 29 O.O. 118, 39 Ohio Law Abs. 584, 54 N.E.2d 157, that "[a]n offer of dedication, to bind the dedicator, need not be accepted by the city or county or other public authorities, but may be accepted by the general public. To deny this would be to deny the whole doctrine of dedication." *Id.* at 430, 29 O.O. at 120, 39 Ohio Law Abs. at 588, 54 N.E.2d at 160. As a result, acceptance of private property for a public use may arise implicitly from the public's utilization of such property, with the owner's silent acquiescence, for a time sufficient to warrant an inference of an intent to dedicate and to constitute an acceptance. *Doud v. Cincinnati* (1949), 152 Ohio St. 132, 39 O.O. 441, 87 N.E.2d 243, paragraph one of the syllabus; *Neeley,* 73 Ohio App.3d at 170, 596 N.E.2d at 1054; *Town Dev., Inc. v. Lorain* (Oct. 11, 1995), Lorain App. No. 94CA006019, unreported, 1995 WL 599037. Although public use alone, without formal acceptance by municipal officials, may be insufficient to impose upon a municipality a duty to maintain dedicated land, *State ex rel. Fitzthum v. Turinsky* (1961), 172 Ohio St. 148, 153, 15 O.O.2d 284, 287, 174 N.E.2d 240, 243, public use "following an intention to dedicate to the public may well constitute such acceptance of the dedication as to estop the owners of the fee from interfering with its continued use by the abutting-property owners and the public." *Id.*

In the present case, however, the record fails sufficiently to demonstrate implicit acceptance resulting from continuous public use of the easement. This

court cannot determine if, or how often, members of the public utilize the easement for access to the park. Assuming such use does exist, we also cannot determine when public use of the easement began. The record reveals that the proposed park area remained undeveloped from the mid–1970s presumably until sometime after February 1992, when Tipp City acquired the land. Although the record shows that ball diamonds and playground equipment now exist on the park property, we are unable to ascertain whether ongoing public use of the easement would support a conclusion that such use implicitly constitutes acceptance of a proposed dedication.

 Nor does the record make clear whether the easement is intended to benefit the public generally or only that relatively small segment of the public residing in the Woodlawn Village plat. A conveyance intended to benefit only a small portion of the public does not constitute a dedication of property for public use. *Magic v. Basquin* (C.P.1951), 60 Ohio Law Abs. 377, 102 N.E.2d 42 (finding no dedication for general public use when the owner of property "dedicates" roads, parks, and a lake for the exclusive use of plat residents); 4 Tiffany, The Law of Real Property (3 Ed.1975) 569, Section 1099 ("As there cannot be a dedication in favor of a particular person, so there cannot be a dedication in favor of a limited number of persons. It must be in favor of the public, and not of a part of the public. Consequently an attempted dedication in favor of a municipality, or the inhabitants of a municipality, has no legal validity, unless construed as a dedication in favor of the whole public, and this although the municipality may represent the public for the purpose of accepting the dedication, and controlling the user of the land dedicated.").

Having determined that the Englishes' 1978 deed did not convey a valid enforceable easement to the Monroe Township Trustees, and having determined that the trial court erred in "constructively modifying" the original deed, we sustain the Snyders' first assignment of error to that extent. However, given the record before us, we cannot determine whether the conveyance constitutes a dedication of the easement for public use. Although we believe that the deed properly may be construed as evincing an intent and offer to dedicate the easement for public use, we cannot ascertain whether continual public use of the easement has resulted in implicit acceptance of the offer. The record does not reveal whether the easement is used by the public at all or, if so, when such use began and how often it occurs. Similarly, this court cannot determine whether the Englishes granted the easement solely for the benefit of Woodlawn Village' residents or for the benefit of the general public. As a result, we must remand these issues for the trial court to resolve.

## II

"The trial court erred by finding that the easement across appellants' property was not abandoned."

In their second assignment of error, the Snyders contend that the trial court erred by failing to find the purported easement abandoned. Specifically, the Snyders claim that the record is devoid of any evidence demonstrating the grantee's intent to use the easement. They also incorporate arguments touched upon under their first assignment of error, claiming that the easement's purpose is "impossible of accomplishment" because the Monroe Township Trustees never owned the park, and contending that the record contains evidence showing the grantee's intent never to use the easement.

■ Initially, we note that the easement's purpose, to provide ingress to and egress from the park, did not become impossible to accomplish simply because the Englishes failed to convey the easement to the owner of the dominant estate. Although the easement's *validity* may have been adversely affected by the improper conveyance, its *purpose* remained viable. Consequently, we reject this basis for finding the easement unenforceable.

■ Concerning the Snyders' abandonment arguments, we agree with the trial court that to demonstrate abandonment, the owner of a servient estate must establish (1) nonuse of the easement, and (2) an intent to abandon. *Warner v. Thompson* (Sept. 27, 1993), Fayette App. No. CA93–02–002, unreported, 1993 WL 386252. In the present case, the Snyders assert that for sixteen years following the Englishes' 1978 easement conveyance, the Monroe Township Trustees held the easement without manifesting any intent to utilize the property. Consequently, they claim that the easement has been extinguished by abandonment.

In support of their argument, the Snyders cite *Junction RR. Co. v. Ruggles* (1857), 7 Ohio St. 1, in which the Ohio Supreme Court explained:

"Doubtless a right of way, like any other right of property, may be abandoned; and such abandonment, which depends on the intention of the owner, may be inferred from lapse of time or other circumstances indicative of an intention on the part of the grantee to abandon; but in this case we see no sufficient evidence of such intention." *Id.* at 10–11.

■ We agree that in some cases the lapse of time *may* give rise to an inference of intent to abandon. However, nonuse for an extended time, standing alone, is not always sufficient to signal an intent to abandon. See *Langhorst v.*

*Riethmiller* (1977), 52 Ohio App.2d 137, 141, 6 O.O.3d 101, 103, 368 N.E.2d 328, 331 (noting that "at least where the easement is created by grant, no duty is imposed upon the owner of the dominant estate to make use thereof as a condition of his right to retain his title thereto"); *Wyatt v. Ohio Dept. of Transp.* (1993), 87 Ohio App.3d 1, 5, 621 N.E.2d 822, 825 (recognizing that " '[a]n abandonment is proved by evidence of an *intention* to abandon as well as of acts by which the *intention* is put into effect; there must be a relinquishment of possession with an *intent* to terminate the easement' " [emphasis added by *Wyatt* court] ). Furthermore, the intent to abandon an easement must by demonstrated by "unequivocal and decisive acts" inconsistent with continued use and enjoyment of the easement. *Warner, supra,* citing *Schenck v. Cleveland, Cincinnati, Chicago & St. Louis Ry. Co.* (1919), 11 Ohio App. 164, 167.

██ In the present case, we cannot agree that nonuse of the easement evinced an intent to abandon the property. The Monroe Township Trustees argue that the easement and the park were not fully developed years ago only because logical subdivision development dictated that the surrounding residential lots and streets should be developed first. We find the trustees' argument convincing. Accordingly, we draw no inference of an intent to abandon the easement arising from nonuse of the ten-foot strip on lot fifty-four, and we find in the record no "unequivocal and decisive acts" inconsistent with the public's continued use of the easement.

Consequently, we overrule the Snyders' second assignment of error.

### III

"The trial court erred by misapplying the law concerning the intention of the parties to constructively modify the original deed for the easement across appellants' property to the benefit of a stranger to the instrument."

In their third assignment of error, the Snyders contend that the trial court erred by "constructively modifying" the Englishes' 1978 deed absent evidence of an omission, defect, or error in the instrument. Specifically, the Snyders assert that by reforming the deed to identify the Tipp–Troy Development Company as grantee rather than the Monroe Township Trustees, the trial court improperly created a new instrument.

However, our resolution of the Snyders' first assignment of error fully addresses this argument. As we noted above, we agree that the initial conveyance from the Englishes to the Monroe Township Trustees was unenforceable. Further-

more, as we explained, the trial court erred by reforming the deed in the absence of a mutual mistake. Consequently, we sustain this assignment of error for the reasons explained more fully under the Snyders' first assignment of error.

## IV

"The trial court erred by finding that the easement across appellants' property presently benefits the current owner of the park."

In their final assignment of error, the Snyders essentially reiterate their earlier arguments that the easement in question was an easement appurtenant and that the easement's grantee never has owned the dominant estate. Consequently, the Snyders contend that the Englishes' deed conveying the easement has been invalid since its inception.

Once again, our resolution of the Snyders' first assignment of error fully addresses this argument. We agree that the conveyance from the Englishes to the Monroe Township Trustees was unenforceable given the trustees' failure to own the dominant estate. Accordingly, we sustain the Snyders' fourth assignment of error.

Finally, we remand this cause for the trial court to consider the existence of a common-law dedication. Specifically, we direct the trial court to consider whether sufficient public use of the easement has resulted in implicit acceptance of an offer to dedicate.

*Judgment reversed*
*and cause remanded.*

BROGAN, P.J., and WOLFF, J., concur.