SZARAZ ET AL., APPELLANTS, *v.* CONSOLIDATED RAILROAD CORPORATION, APPELLEE.

(No. 10985—Decided June 1, 1983.)

*Ms. Patricia M. Ritzert,* for appellants.

*Mr. Thomas R. Skulina,* for appellee.

MAHONEY, J. Plaintiffs-appellants, Stephen and Anna Szaraz, challenge a trial court decision denying their request for an order requiring defendant-appellee, Consolidated Railroad Corporation, either to reconstruct a railroad crossing or to pay them compensation for the alleged appropriation of their easement. The lower court also denied appellants' prayer for an easement of necessity on appellee's land. We affirm.

Appellants own approximately thirty-seven acres of land located in Hudson, Ohio. The land consists of three undeveloped parcels bisected by the tracks of appellee railroad. The location of the parties' land is illustrated in the diagram at the bottom of the following page.

The record indicates that appellants' properties and the railroad's property were once part of a single fee held by Milton Lusk. In 1849, Lusk conveyed a seventy-foot strip of land to the Cleveland & Pittsburgh Railroad, appellee's predecessor in interest. There is no evidence that the 1849 deed expressly reserved an easement permitting the grantor to cross the railroad's land. However, this grant severed the western portion of Lusk's land from access to the public road. Further, subsequent deeds and early railroad plans indicate the existence of at least one easement across the railroad's land. Thus, we may assume an easement to benefit the western portion of Lusk's land existed either by express or implied reservation.

In 1881, Milton Lusk conveyed a portion of land that included Anna Szaraz's parcel No. 3 to Cyrus Fox. The 1881 deed expressly permitted Fox the use of Lusk's easement. Thereafter, Milton Lusk's in-

terest in the land passed to his wife, Louisa. In 1899, Louisa Lusk granted additional land to the railroad, thereby widening the original strip. The 1899 deed reserved "the existing cattle pass of Cyrus Fox." In 1900, Fox also conveyed some additional land to the railroad to increase the width. The 1900 deed stated:

"* * * As a further consideration for this conveyance, the Grantee Company shall permit the Grantor to cross the Right of Way of the Grantee at a point on the land or opposite to the land of Louisa J. Lusk now used as a farm crossing and cattle pass, together with right of access to same on each side of Railroad, by means of lanes eight (8) feet in width to be fenced on each side by Grantee Company. * * *"

The record reveals that a plank or board crossing over the railroad tracks was in existence and was used until the Ohio turnpike was constructed in the early 1950's. Expert testimony opined that this crossing was the Lusk-Fox easement referred to in the early deeds. During the turnpike construction, the tracks were temporarily relocated. At that time, Western Construction Company owned parcels Nos. 1 and 2 and used the easement over appellee's land to gain access to parcel No. 1 where it dumped debris excavated during the turnpike construction. The state of Ohio owned parcel No. 3. Upon completion of the toll road, the tracks were returned to their former location. However, the crossing was not

replaced, and a fence was built along the tracks.

Stephen Szaraz took title to parcels Nos. 1 and 2 in 1965. Anna Szaraz acquired parcel No. 3 in 1971. In 1979, Stephen Szaraz filed a complaint asking the court below to order the railroad either to reconstruct the crossing or to pay him compensation for the alleged appropriation of his right of way. Alternatively, he requested that the court grant him an easement of necessity across appellee's land and permit him to construct a crossing. Anna Szaraz was added as a plaintiff.

The trial court found that any easement appellants' land had previously enjoyed had been extinguished by adverse possession and refused to find an implied easement in appellants.

### Assignment of Error I

"The decision of the trial court was not based upon a pleaded defense."

It has long been held that adverse possession may be shown by a general denial of plaintiffs' right and possession. *Rhodes* v. *Gunn* (1880), 35 Ohio St. 387; and *Wintermute* v. *Montgomery* (1860), 11 Ohio St. 442. See, also, 2 Ohio Jurisprudence 3d 625, Adverse Possession, Section 109. Civ. R. 8(C) does not compel the defendant to plead adverse possession as an affirmative defense. Thus, we do not believe appellee was required to specifically plead adverse possession. Further, the issue was tried without objection from appellants and was argued by the parties in their post-trial briefs. Assuming, *arguendo,* that the pleadings were defective pursuant to Civ. R. 15(B), the issue was properly treated as if it had been raised in appellee's answer.

### Assignment of Error II

"The trial court erred in concluding that the evidence in this case established by a preponderance of evidence the affir-

mative defense of adverse possession for 21 years."

An easement is an interest in the land of another which entitles the owner of the easement to a limited use of the land in which the interest exists. 36 Ohio Jurisprudence 3d 386, Easements and Licenses, Section 1.

"* * * An easement implies necessarily a fee in another, and it follows that it is a right, by reason of such ownership, to use the land for a special purpose, and one not inconsistent with the general property in the land of the owner of the fee, his property rights, however, to be exercised in such way as not to unreasonably interfere with the special use for which the easement was acquired. * * *" *Cincinnati, Hamilton & Dayton Ry. Co.* v. *Wachter* (1904), 70 Ohio St. 113, 118.

An easement may be extinguished by adverse possession.

"As a general rule, an easement cannot be lost by mere nonuser, but it is subject to loss by adverse user. In order to result in the loss of an easement, the adverse use must be continued for the period necessary to create an easement, that is, the statutory period for the recovery of real property, or 21 years.

"Since the owner of the fee has all the uses incident to a piece of property not inconsistent with a dominant easement, use by the owner is not adverse unless an inconsistent right or easement is asserted. In order to destroy an easement by adverse use, the use must be adverse to the enjoyment of such easement by the owner thereof; it must be a denial of right in the owner of the easement to use it for the purposes thereof. * * *" 2 Ohio Jurisprudence 3d 606, Adverse Possession, Section 94.

The trial court found:

"* * * In this case, it has been established that the railroad reconstructed its tracks in such a manner as to make it impossible for the crossing to be used. Not only was a fence erected, but the tracks are so situated in relation to

the surrounding land as to themselves constitute a barrier to preclude getting from one side to another, insofar as the difference in grade between the top of the tracks and the surrounding land would require the land to be built up so as to enable one to cross.

"Thus, the use of the Defendant's land has been antagonistic to its use for crossing purposes. In creating the impossibility of its use for crossing purposes, the defendant's use of its land was clearly hostile or adverse to the rights of the neighboring owner or owners to cross. The defendant's use of its land to the exclusion of the crossing was also open, notorious, exclusive and continuous for over twenty-one years. * * *"

Stephen Szaraz testified that he could not enter or exit parcels Nos. 1 and 3 from parcel No. 2 because the crossing had been removed in the early 1950's and had not been reconstructed. Clearly, the railroad's reconstruction of the tracks prevented the use of the easement. The record does not disclose the exact date the tracks were reconstructed. However, reconstruction had been accomplished by 1955 when the turnpike was opened to automobile traffic. Further, in 1965, Stephen Szaraz contacted the railroad to protest the adverse use and requested that the crossing be replaced. Thus, the railroad's use has been without the easement owner's permission at least since 1965.

However, appellants contend that the railroad has not shown that its use from 1955 to 1965 was adverse to the prior owners. If Western Construction Co. and the state of Ohio approved the railroad's use, it was not adverse. However, If Western Construction Co. and the state permitted the railroad to use its land so as to make use of the easement impossible, we believe that such permission is, in effect, an abandonment of the easement. In either case, the easement was extinguished.

Appellants also contend that the reconstructed tracks do not prevent pedestrian traffic to and from parcels Nos. 1 and 3, thereby permitting the Szarazes to use their land for picnics and other recreational purposes. However, Mr. Szaraz testified that prior to the turnpike construction he used the easement for access to his land for picnics and other recreational activities. He further testified that the reconstruction prevented subsequent similar use of the easement. We believe the trial court could infer from this testimony that the reconstruction prevented pedestrian as well as vehicular traffic.

Assignment of Error III

"The trial court erred in failing to find an easement of necessity over defendant's railroad tracks."

"An easement of necessity has been defined as one implied by law to carry into effect the intention of the parties. It is well settled that, where a grantee of real estate has no means of access thereto, except over other lands of his grantor, a grant of an easement of way to it is implied. It is equally well settled that a way of necessity may be reserved by implication, where the grantor has no other access to his land except over the land granted. * * * A way of necessity can only be granted in land owned by the grantor at the time of the conveyance, and never out of the land of a stranger.

"* * *

"Easements may be implied from necessity alone, but it is not the necessity which creates a right of way of necessity, but the fair construction of the acts of the parties. A way of necessity rests upon the intent of the parties as determined by a fair construction of the deed or other conveyance, and is based upon the theory that without it the grantor or grantee, as the case may be, cannot make use of his land. Necessity is only a circumstance resorted to for the purpose of showing the intention of the parties and raising an implication of a grant. The necessity merely

furnishes evidence of the intention of the parties; it is not itself the basis of implication. * * *'' 36 Ohio Jurisprudence 3d 446, 447-449, Easements and Licenses, Sections 47-48.

In the instant case, the intention of the grantors is clear. Milton and Louisa Lusk and Cyrus Fox intended to give the appellee's predecessor railroad a fee simple interest in the land. Any easement either expressed in the deed or implied by necessity would have been created in 1849 when Milton Lusk conveyed land to the railroad. Louisa Lusk in 1899 and Cyrus Fox in 1900 expressly reserved an easement in additional land conveyed to the railroad. According to appellants, their claim to an easement stems from the Lusks and Fox. This easement has been extinguished and cannot be revived. Since there has never been a conveyance of land between appellants and appellee, a new easement of necessity cannot now be implied.

We overrule appellants' assignments of error and affirm the judgment of the trial court.

*Judgment affirmed.*

QUILLIN, P.J., and GEORGE, J., concur.