DECISION AND JUDGMENT ENTRY
Appellant O.O. McIntyre Park District appeals a judgment quieting title to and granting possession of certain real property to various plaintiffs. The appellant assigns seven errors for our review:
 Assignment of Error No. 1: The Trial Court Erred As A Matter Of Law By Failing To Dismiss This Action As The Result Of Appellees' Failure to Refile Their Action Within One Year Following Their Voluntary Dismissal
 Assignment of Error No. 2: The Trial Court Erred In Denying The Park District's Initially Filed Motion To Dismiss or, In the Alternative, Motion For Summary Judgment
 Assignment of Error No. 3: The Trial Court Erred In Determining That Appellees' Predecessors In Interest Conveyed to the Railroad, the Park District's Predecessor In Interest, Only An Easement
 Assignment of Error No. 4: The Trial Court Erred As A Matter Of Law By Denying The Park District's Motion to Strike Appellees' Demand For A Jury
 Assignment of Error No. 5: The Trial Court Erred In Failing To Grant The Park District's Motion For A Directed Verdict Following The Close Of Appellees' Case-In-Chief
 Assignment of Error No. 6: The Trial Court Erred When it Failed to Grant the Park District's Motion for a Directed Verdict Following the Close of All Evidence
 Assignment of Error No. 7: The Trial Court Erred by Failing to Give Separate Verdict Forms for Each of Appellees Involved in the Litigation
Finding none of the assignments meritorious, we affirm the judgment of the Gallia County Court of Common Pleas.
 I.
Over one hundred years ago, L.W. Varian, Samuel McCarley, and J.C. Watts owned three separate parcels of real property located in Gallia County. In October 1871, Varian executed an instrument in favor of the Gallipolis, McArthur, and Columbus Railroad Company ("GMC"). The granting clause of the instrument stated:
 In consideration of one dollar to us paid by The Gallipolis[,] McArthur and Columbus Railroad Company (a corporation created under the laws of the state of Ohio. [sic] to build[,] maintain and operate a railroad) and of the benefits that would accrue to us by the construction of the road of said company through our lands hereinafter mentioned, and as an inducement to said company to so construct the same, we, the undersigned, do hereby bargain and grant unto said company and its assigns, the right to locate, construct and forever maintain, use and operate said road, on such line as it or them may seem best through our lands containing about 137 acres situated in * * * Springfield Township, Gallia County, Ohio.
Samuel and Sarah McCarley executed a virtually identical instrument in October 1871 concerning their sixty-three acres in Huntington Township. In April 1872, J.C. Watts also executed a virtually identical instrument in connection with his forty-acre parcel in Springfield Township. Each of these instruments was recorded with the county recorder in October 1908. GMC ultimately constructed and operated a railroad that traversed the Varian, McCarley, and Watts parcels.
Ownership of the Varian, McCarley, and Watts parcels passed through various successors-in-interest before eventually arriving in the hands of the appellees. Appellees Robert and Diana McCarley are the successors-in-interest to the McCarley parcel; appellees John, James, Ross, and Peggy Sexton each own a one-fourth interest in the Varian parcel; and appellee Beach Enterprises, Inc. is the successor-in-interest to the Watts parcel. Meanwhile, CSX Transportation, Inc. ("CSX") ultimately became a successor-in-interest to GMC. Although the railroad remained operational through much of the century, rail traffic through the appellees' land became sporadic in the early 1970s. Between 1978 and 1989, Southern Ohio Coal Company made almost exclusive use of the rail line running through the appellees' property, using trains to run coal between some of its mines. The coal company ceased this use in 1989, after which the line was not used for railroad purposes.
In 1992, the appellant began contemplating the construction of a recreational trail along the CSX railroad line. In January 1993, the appellant signed an agreement with CSX to purchase over three hundred acres of land between Minerton and Kanauga Junction, Ohio, that had previously been part of an active railroad. In March 1993, CSX delivered a quitclaim deed granting its interest in the railroad premises to the appellant. The appellant ultimately began constructing the recreational trail in 1993.
In September 1991, less than two years before the quitclaim conveyance to the appellant, CSX filed a "Notice of Exemption" with the federal Interstate Commerce Commission ("ICC")[1]
seeking permission to abandon approximately twenty-eight miles of railroad between Minerton and Kanauga Junction in Vinton and Gallia Counties. See Section 1152.50, Title 49, C.F.R. The twenty-eight mile stretch included the portions of the railroad that ran through the appellees' parcels. The ICC approved CSX's request and the abandonment become effective in November 1991.
On May 11, 1995, the appellees and several other plaintiffs filed a complaint against the appellant and the individual commissioners of the park district. The complaint alleged that the appellees owned fee simple title to the interest acquired by the appellant from CSX and that CSX had abandoned the rights-of-way prior to the conveyance to the appellant. The complaint sought damages for trespass and a judgment granting possession of the disputed rights-of-way to the appellees. The plaintiffs also sought to quiet title to the rights-of-way over their various parcels of property. The appellant and the other defendants filed a motion for judgment as a matter of law. On September 20, 1995, prior to the court ruling on the defendants' motion, the various plaintiffs (including the appellees) voluntarily dismissed their complaint pursuant to Civ.R. 41 (A).
On December 17, 1996, the appellees re-filed their complaint.[2]
The appellees ultimately substituted a second amended complaint, which named the appellant as the only defendant. Like the complaint that the appellees voluntarily dismissed in 1995, the second amended complaint pleaded causes of action for quiet title, ejectment, and trespass.[3] The complaint prayed for a judgment quieting title of the former railroad right-of-way in their favor and recovery of possession over the right-of-way.
Prior to filing an answer to the second amended complaint, the appellant filed a motion to dismiss or, alternatively, for summary judgment.[4] The record contains no formal ruling on the appellant's motion. The appellant later moved for summary judgment on the basis that it owned fee simple title to the strips of former railroad land. The trial court denied the motion. The court found that the appellant acquired, at most, an easement because that was all the 1871 and 1872 conveyances by McCarley, Varian, and Watts transferred to GMC. The case proceeded to a jury trial, over the appellant's objection, solely on the issue of whether CSX had abandoned its interest in the railroad right-of-way over the appellees' property. The jury returned a verdict finding that CSX had, in fact, abandoned its interest prior to the conveyance to the appellant. In accordance with the jury's verdict, the trial court entered judgment in favor of the appellees. The judgment quieted title over the disputed rights-of-way to the appellees and decreed that they were entitled to immediate possession. The appellant commenced this appeal.
 II.
In its first assignment of error, the appellant argues that the appellees' action was time-barred by the "savings statute," codified at R.C. 2305.19. This statute states:
 In an action commenced, or attempted to be commenced, * * * if the plaintiff fails otherwise than upon the merits, and the time limited for commencement of such action at the date of
* * * failure has expired, the plaintiff * * * may commence a new action within one year after such date. (Emphasis added.)
The appellees originally filed a complaint against the appellant in May 1995 and voluntarily dismissed it on September 20, 1995. A voluntary dismissal pursuant to Civ.R. 41 (A) constitutes a "failure otherwise than upon the merits" within the meaning of R.C. 2305.19. Frysinger v. Leech (1987), 32 Ohio St.3d 38, paragraph two of the syllabus. The appellant argues that R.C.2305.19 required the appellees to re-file their complaint within one year after the voluntary dismissal. Because the appellees did not re-file their complaint until December 17, 1996, almost fifteen months after the voluntary dismissal of the previous complaint, the appellant maintains that the action was time-barred. We do not agree.
The savings statute applies only when the "time limited for the commencement of such action at the date of * * * failure [otherwise than on the merits] has expired * * *." R.C. 2305.19. The savings statute is neither a statute of limitations unto itself nor a tolling statute extending the applicable statute of limitations for a particular cause of action. Lewis v. Connor
(1985), 21 Ohio St.3d 1, 4. The savings statute does not apply unless an action is timely commenced and then dismissed without prejudice after the applicable statute of limitations has run.Id.; see, also, Lohrenzen v. Brown (1998), 129 Ohio App.3d 770,773. Thus, we must decide whether the statute of limitations governing the appellees' claims had expired on the date the appellees voluntarily dismissed the original complaint, i.e.
September 20, 1995.
The appellant argues that R.C. 2744.04 (A) supplies the statute of limitation governing the appellees' complaint. This statute provides a two-year limitations period for an "action against a political subdivision to recover damages for injury, death, or loss to person or property allegedly caused by any act or omission in connection with a governmental or proprietary function * * *." (Emphasis added.) The parties do not dispute that the appellant is a political subdivision within the meaning of R.C. 2744.04. Because the alleged acts giving rise to the appellees' complaint began in 1993, the appellant argues that the statute of limitations had expired when the appellees voluntarily dismissed the original complaint; therefore, the appellant insists that the appellees were obliged to re-file their complaint by September 20, 1996. In making this argument, however, the appellant has identified the wrong statute of limitation.
In both the voluntarily-dismissed complaint and the re-filed complaint, the appellees pleaded causes of action for quiet title and ejectment, alleging that the appellant was in wrongful possession of their property. Ultimately, these were the only causes of action that proceeded to judgment. However, neither of these causes of action is one for damages. R.C. 2744.04 (A)'s two-year statute of limitation for damage actions against political subdivisions is therefore inapplicable by its plain terms and cannot form the basis for applying the savings statute in this case. The savings statute is applicable only if the appropriate statute of limitation for ejectment and quiet title actions had run at the time of the appellees' voluntary dismissal.[5]
The statute of limitation applicable to this case lies at R.C.2305.04, which sets a twenty-one-year limitations period for an "action to recover the title to or possession of real property * * *." R.C. 2305.04, which is commonly thought of as the statutory period for adverse possession, is the applicable statute of limitations for both quiet title and ejectment actions. See Hallv. Cignoni (June 18, 1993), Lawrence App. No. 92CA19, unreported (recognizing that R.C. 2305.04 applies in ejectment actions);Ryan v. Zaffiro (1960), 111 Ohio App. 463, 469 (same); Hunter v.Bd. of Commrs. of Knox Cty. (Apr. 24, 1997), Knox App. No. 96CA36, unreported (noting that quiet title action may be commenced at any time before statutory period of adverse possession); see, also, Bradfield v. Hale (1902), 67 Ohio St. 316, paragraph two of the syllabus. The appellees therefore had twenty-one years from the time their cause of action accrued to bring quiet title and ejectment actions against the appellant. The parties do not dispute that the causes of action against the appellant accrued sometime in 1993; thus, the statute of limitations had not expired at the time the appellees voluntarily dismissed their complaint in September 1995. The savings statute is therefore inapplicable and the appellees' re-filing of their complaint in December 1996 was timely. The first assignment of error is overruled.
 III.
In its second assignment of error, the appellant asserts that the trial court should have granted its motion to dismiss or, in the alternative, summary judgment. The appellant maintains that it was entitled to judgment as a matter of law on the appellees' complaint. We disagree.
The appellees filed (with leave from the trial court) a second amended complaint in this case, upon which they ultimately prevailed. The appellant filed a motion to dismiss or, in the alternative, for summary judgment on the second amended complaint. The record contains no ruling by the trial court on this motion. When the record is silent on the court's ruling on a motion, we generally assume that the trial court denied the motion. Takacs v. Baldwin (1995), 106 Ohio App.3d 196, 209; Whitev. Wong (July 22, 1998), Scioto App. No. 97CA2552, unreported.[6] Moreover, because the record is silent as to the trial court's treatment of the appellant's motion, we will assume that it was treated as a motion to dismiss and not as a motion for summary judgment. See Petrey v. Simon (1983), 4 Ohio St.3d 154, paragraph two of the syllabus (trial court cannot treat motion to dismiss as a motion for summary judgment unless it notifies all parties within fourteen days of hearing on the motion).
A trial court's ruling on a motion to dismiss for failure to state a claim presents a legal question, which we review de novo.Shockey v. Fouty (1995), 106 Ohio App.3d 420, 424; Steiner v.Steiner (1993), 85 Ohio App.3d 513, 518. In order for a court to dismiss a complaint for failure to state a claim upon which relief may be granted, it must appear beyond doubt that the plaintiff can prove no set of facts that would entitle him to relief. Id.; York v. Ohio State Highway Patrol (1991), 60 Ohio St.3d 143,144. The court must presume all factual allegations in the complaint as true and draw all reasonable inferences in favor of the non-moving party. State ex rel. Edwards v. Toledo CitySchool Dist. Bd. of Edn. (1995), 72 Ohio St.3d 106, 108; Perez v.Cleveland (1993), 66 Ohio St.3d 397, 399.
Under this assignment of error, the appellant argues that the trial court erroneously refused to follow the Second Appellate District's decision in Rieger v. Penn Central Corp. (May 21, 1985), Greene App. No. 85CA11, unreported. In Rieger, landowners sought a judgment declaring that they had title to a railroad right-of-way that formerly crossed their property. Penn Central had discontinued railroad operations in 1981 and removed ties and tracks between 1981 and 1982, but did not remove the ballast from the plaintiffs' property and continued to pay taxes on the right-of-way. Following removal of the tracks, Penn Central expressed an interest in conveying the right-of-way over the plaintiffs' property to the State of Ohio for use as a recreational trail. The trial court in Rieger determined that Penn Central had an easement over the plaintiffs' property that it had not abandoned. The Second District affirmed the trial court's judgment, concluding that "competent, credible evidence" supported the trial court's determination that no abandonment took place. Id. at 6-7. The court also rejected the plaintiffs' argument that the proposed conveyance of the right-of-way for trail purposes would exceed the scope of Penn Central's easement, thereby extinguishing it. Relying heavily upon cases from other jurisdictions, the Second District held that the use of a railroad right-of-way for recreational trail purposes would not constitute an abandonment of a railroad right-of-way easement.Id. at 9-11; see, also, Minnesota Dept. of Wildlife v. State ofMinnesota (Minn. 1983), 329 N.W.2d 543; Faus v. City of LosAngeles (1967), 67 Cal.2d 350, 451 P.2d 849 [431 P.2d 849].
In this case, the appellant argues that the appellees are making essentially the same argument that the Rieger court rejected, i.e. that CSX's conveyance of an easement to the appellant for recreational trail purposes constituted an abandonment of the easement. Although this court is not bound by the Second District's holding in Rieger, the appellant argues that Rieger's factual and legal similarity provides persuasive authority for granting it judgment as a matter of law. Again, we disagree.
The appellant's argument overemphasizes Rieger's applicability to the circumstances of this case. Under this assignment of error, the only basis for applying Rieger involves the holding that a conveyance of a railroad right-of-way easement for recreational trail purposes does not constitute abandonment. However, the issue in this case is not as narrow as the portion of Rieger emphasized by the appellant. The second amended complaint alleged that the easement over the appellees' property was abandoned prior to CSX's quitclaim conveyance to the appellant for recreational trail purposes. Thus, the second amended complaint alleged a set of facts that, if proven, would have entitled the appellees to relief on the basis that CSX had no interest to convey to the appellant when it executed the quitclaim deed in March 1993. Cf. Cornett v. MuskingumRecreational Trail, Inc. (Aug. 3, 1998), Muskingum App. No. CT98-02, unreported (holding summary judgment inappropriate when genuine issues of fact remained concerning railroad's abandonment of easement prior to quitclaim conveyance for trail purposes) The appellees alleged (and ultimately presented evidence to prove) much more than the mere conveyance by CSX to the appellant as a basis for an abandonment. Further, we note that the ultimate question decided by the jury had nothing to do with the conveyance from CSX to the appellant. The jury decided that CSX abandoned its property interest in the easements prior to the quitclaim conveyance to the appellant. Rieger's holding that a conveyance of a railroad easement for trail purposes does not constitute abandonment is therefore not controlling. The second assignment of error is overruled.
 IV.
The appellant's third assignment of error takes issue with the trial court's determination that its predecessor, CSX, held right-of-way easements over the appellees' property. The appellant contends that CSX owned fee interests in the strips of land upon which the railroad formerly operated and that it therefore acquired fee simple title to these strips when CSX quitclaimed its interest to them in 1993. Because it owned fee simple title to the strips of land formerly utilized for railroad purposes, the appellant claims that it was entitled to judgment as a matter of law. The appellant is incorrect.
CSX's predecessor in interest (GMC) acquired interests in the appellees' land through virtually identical conveyances from the appellees' predecessors, i.e. Samuel McCarley, L.W. Varian, and J.C. Watts, in 1871 and 1872. The granting clause stated that GMC acquired from these property owners "the right to locate, construct, and forever maintain, use, and operate" a railroad. The instruments further stated that the "premises hereby granted embrace a strip one hundred feet wide through said lands" and that GMC was "to have and to hold said premises, rights and privileges and the use of said strip to the said company and to its assigns forever free from any claim by us or our heirs or assigns, for any damages or compensation other than what is herein expressed." The appellant seizes upon certain language in these instruments to argue that they conveyed fee simple title to the railroad. The appellant singles out the words "forever" and "grant" as indicating an intent to convey a fee interest in the strips of land used by the railroad. The appellant also notes that the instruments contain no indication of a property right reverting back to the property owner if the strips were not used for railroad purposes. Accordingly, the appellant argues that it acquired fee simple title to these strips of property and that it is free to utilize the land for recreational trail purposes.
Construction of a written instrument of conveyance is a question of law. Alexander v. Buckeye Pipe Line Co. (1978),53 Ohio St.2d 241, paragraph one of the syllabus; Cydrus v. Horton
(Dec. 10, 1998), Ross App. No. 98CA2406, unreported. Accordingly, we afford no deference to the trial court's interpretation of the conveyances at issue and independently determine whether the appellees' predecessors-in-interest transferred an easement or fee. Ball v. Crabtree (Dec. 10, 1998), Scioto App. No. 97CA2557, unreported. When interpreting a written conveyance, we will not go beyond the four corners of the instrument when it is worded in clear and precise terms and the meaning is evident on its face.Cydrus, supra.
An easement is an interest in the land of another that entitles the easement holder to some limited use of the land (e.g. right of way for ingress/egress) on which the interest exists. SeeSzaraz v. Consolidated RR. Corp. (1983), 10 Ohio App.3d 89, 91. Whether an instrument of conveyance to a railroad grants an easement or a fee depends upon the language of the grant. When the instrument conveys a "right" rather than a tract or strip of land, courts construe the conveyance as granting an easement rather than a fee. Cincinnati, Hamilton Dayton Ry. Co. v.Wachter (1904), 70 Ohio St. 113, paragraph one of the syllabus;Parrett v. Penn Central Corp. (July 27, 1987), Pickaway App. No. 86CA17, unreported; Baltimore Ohio RR. Co. v. Oak Hill (1927),25 Ohio App. 301; see, generally, Annotation, Deed to Railroad Company as Conveying Fee or Easement (1966), 6 A.L.R.3d 973, 1013. Conversely, when the granting clause of an instrument specifically conveys land, the instrument generally conveys a fee interest in the land described. Id. at 1013; see, also, LittleMiami, Inc. v. Wisecup (1984), 13 Ohio App.3d 239, 241 (fee conveyed when deed specifically grants "real estate" to railroad company). In this case, the granting clauses of the instruments to GMC expressly grant a "right" to locate, construct, maintain, and use a railroad. The grant of such a "right" rather than any specific land indicates the intent to transfer an easement over the appellees' parcels as opposed to fee interests in the land used. See Parrett, supra (construing deeds conveying a "right to enter upon any lands I own * * * and to hold and use a strip thereof * * * for the purposes of a railroad, so long as may be necessary" as grants of easements); Ball, supra (construing grant of a "right of way, over any land owned by us in the County of Scioto" as an easement). Further, the instruments contain no metes and bounds descriptions of any specific land, as would a typical conveyance of a fee interest. Id. Based on the language of the instruments, we agree with the trial court's determination that the appellees' predecessors conveyed an easement, and not a fee interest, to GMC.
The appellant places great emphasis on the words "grant," "forever," and "heirs or assigns" as indicators of a fee simple interest. However, the appellant incorrectly views these words as talismanic signs of a conveyance in fee. None of these words or phrases, whether taken alone or viewed together, supports the appellant's argument. For purposes of determining whether a fee or easement is conveyed, the word "grant" is neutral at best. An easement may be created by specific grant. Campbell v. GreatMiami Aerie (1984), 15 Ohio St.3d 79, 80; Kamenar RR. Salvage,Inc. v. Ohio Edison (1992), 79 Ohio App.3d 685, 689. Similarly, the use of the word "forever" in the granting clause does not indicate a fee simple. The same clause in which the word "forever" appears in the instruments at issue equivocally states that only a "right" is being granted. When the granting clause refers to a "right" rather than specific land, provisions describing the grantee's interest as lasting "forever" do not transform the easement conveyed by the granting clause into an estate in fee. Annotation, supra, 6 A.L.R.3d at 1024. The word "forever" indicates the duration of the easement and not the grant of a fee interest. The appellees' predecessors granted an easement containing no limit as to time, i.e. a perpetual easement, to be terminated only by release or abandonment. SeeGarlick v. Pittsburgh Western Ry. Co. (1902), 67 Ohio St. 223,235, citing Railroad Co. v. Ruggles (1857), 7 Ohio St. 1. Finally, the phrase "heirs or assigns" as it appears in the instruments does nothing to support the argument that the appellees' predecessors conveyed fee interests. This language appears in the following clause describing the interest acquired by the railroad:
 To have and to hold said premises, rights and privileges and the use of said strip to the said Company and to its assigns forever free from any claim by us or our heirs or assigns for any damages or compensation other than what is herein expressed.
The quoted language is arguably ambiguous; it describes interests in "premises," as well as "rights and privileges" and "use" of the strip of land for the railroad, thereby invoking language consistent with both the grant of a fee and the grant of an easement. However, this language is not part of the granting clause; rather, the phrase appears in the habendum clause. Thehabendum clause generally follows the granting clause and defines the extent of ownership in the thing granted. Parrett, supra. Thehabendum clause may modify, limit, and explain the grant, but cannot defeat it when the granting language is clear and unambiguous. See id.; Hinman v. Barnes (1946), 146 Ohio St. 497,506-07. Because the granting clause unambiguously grants only a "right" to locate, construct, maintain, use, and operate a railroad, an easement was created. The habendum clause language cannot defeat this unambiguous grant of an easement.
The third assignment of error is overruled.
 V.
In its fourth assignment of error, the appellant takes issue with the appellees' demand for a jury trial. The appellant argues that this case involved solely equitable issues that the court should have decided without a jury. Accordingly, the appellant insists that the trial court should have granted its motion to strike the appellees' jury demand. The appellant's argument raises a legal question, which we review de novo.
R.C. 2311.04 states:
 Issues of law must be tried by the court, unless referred as provided in the Rules of Civil Procedure. Issues of fact arising in actions for the recovery of money only, or specific real or personal property, shall be tried by a jury, unless jury trial is waived or unless all parties consent to a reference under the Rules of Civil Procedure.
Thus, if this case is an action for the "recovery of real property," it is an action triable by a jury. See Raymond v. T.,St. L. K.C. RR. Co. (1897), 57 Ohio St. 271, 287. Conversely, if we characterize the appellees' action as simply one to quiet title, the action is equitable in nature. See McBride v. Murphy
(1924), 111 Ohio St. 443, 447. Equitable actions are traditionally tried by the court, without a jury. Hiener v.Kelley(July r23, 1999), Washington App. No. 98CA7, unreported, citing Pierce v. Stewart (1899), 61 Ohio St. 422, paragraph one of the syllabus. The allowance of a jury trial when no such right exists may constitute reversible error. See, e.g., Pokorny v.Local No. 310 (1974), 38 Ohio St.2d 177, 180-81. We find no error in this case because we disagree with the appellant's characterization of this case as purely equitable in nature.
Whether an action invokes the court's equitable jurisdiction depends upon the nature of the action as shown by the pleadings; it does not depend upon the understanding of the parties or the form of the trial court's judgment. Raymond, supra, at paragraph three of the syllabus; see, also, Reed v. Reed (1874), 25 Ohio St. 422, paragraph one of the syllabus. Thus, in order to determine whether a plaintiff invoked the equitable jurisdiction of the trial court, we must examine the pleadings and ascertain the primary relief sought. See Bradford v. Micklethwaite (1954),99 Ohio App. 119, 123. Even if a complaint seeks equitable relief, an action may still be considered one at law if the equitable relief is merely ancillary to the primary relief sought at law. See Raymond, 57 Ohio St. at 287. Conversely, when a complaint seeks equitable relief and requests incidental relief obtainable at law, the action is considered equitable in nature.Bradford, 99 Ohio App. at 123. The nature of the proceeding may also be changed by an affirmative defense or a counterclaim alleged by the defendant. Slane v. Metz (Aug. 16, 1977), Franklin App. No. 77AP-155, unreported. If a defendant's answer or counterclaim makes a case for equitable relief that, if granted, would bar an action at law asserted by the plaintiff, the court may determine the action to be equitable. Id.; see, also, Gill v.Pelkey (1896), 54 Ohio St. 348, 357-61; cf. Hiener, supra (noting that a legal counterclaim that, if true, would extinguish a purely equitable claim may be heard by a jury).
The appellant emphasizes that the appellees sought to quiet title in the former railroad rights-of-way. To maintain a quiet title action, a plaintiff must either be in possession of the real property in question or be out of possession but claiming an interest in the land by way of reversion or remainder. R.C.5303.01; see, also, Slane, supra. When a plaintiff brings an equitable action under R.C. 5303.01, "the court will administer full relief, both legal and equitable, so far as it pertains to the real property in question and all circumstances and transactions relating to the subject property." Id., citingKiriakis v. Fountas (1924), 109 Ohio St. 553. However, if a plaintiff is not in possession of the real property in question, an action to quiet title would not lie. Id.; see, also,Lichtenberger v. Milligan (1939), 63 Ohio App. 107, 112. If the plaintiff's action is one to determine its interest in the property as against another party in possession, the action is one to recover property and is triable by a jury. See id.; see, also, Raymond, supra, at paragraph four of the syllabus.
Our examination of the pleadings leads us to conclude that the appellees' action was not primarily equitable in nature. Paragraph 27 of the appellees' second amended complaint alleged that:
 Defendants are currently in possession of those portions of the former railroad right-of-way which cross the property of the plaintiff. The defendants have no legal right to possess any portion of the former railroad right-of-way crossing the lands of the plaintiffs and the defendants unlawfully keep plaintiffs out of possession of the property.
(Emphasis added.) In its answer to the second amended complaint, the appellant admitted that it was in possession of the former railroad rights-of-way crossing the appellees' various parcels.[7] The pleadings therefore allege that the appellees were out of possession of the real property in question, with the appellees seeking a judgment that would adjudge their title in the former railroad rights-of-way to be good as against the claim of the appellant. Although the appellees prayed for injunctive relief and a judgment quieting title, the second amended complaint also sought recovery of the real property in question. In this situation, the equitable relief is merely ancillary to the prayer for possession and does not change the character of the action as one to recover specific real property, to which the right to jury trial attaches. Raymond, supra, 57 Ohio St. at 287
and paragraph four of the syllabus; R.C. 2311.04.
The additional denials and defenses in the appellant's answer do not change the nature of the appellees' action from being one for the recovery of specific real property. In addition to admitting it possessed the property in question, the appellant denied the appellees' claim of ownership. The appellant also alleged its own ownership based on "equitable principles and Ohio law" as an affirmative defense to the allegations in the second amended complaint. Although the appellant raised these defenses, it did not seek any equitable relief (e.g., a counterclaim to quiet title in itself) that, if granted, could have barred the appellees' action for recovery of property. Unless a defendant's answer makes an "affirmative case * * * which requires a trial in advance of a trial on the plaintiff's cause of action, and, if found in favor of the defendant, would wholly supersede plaintiff's claim, the trial of the case made by the plaintiff is not affected." Raymond, 57 Ohio St. at 288; see, Huntington Natl.Bank v. Heritage Investment Group (1983), 12 Ohio App.3d 113, 114
(court properly denies defendant's request for jury trial on legal counterclaim that is incidental or ancillary to the equitable nature of the original claim). The equitable plea in the answer is raised merely as a defense and does not change the nature of the appellees' action. Raymond at 288; see, also, Bughv. Sturgeon (1884), 41 Ohio St. 402; Lichtenberger, supra,63 Ohio App. at 114-15; Slane, supra. Thus, the trial court did not err in refusing to strike the appellees' jury demand. We overrule the appellant's fourth assignment of error.
 VI.
In its fifth and sixth assignments of error, the appellant argues that the trial court should have directed a verdict in its favor pursuant to Civ.R. 50 (A) (4). The trial court denied two motions for directed verdict made by the appellant, one at the close of the appellees' case-in-chief and the other at the close of all the evidence. See Civ.R. 50 (A) (1). We agree with the trial court that a directed verdict in the appellant's favor was improper.
Civ.R. 50 (A) (4) states:
 When a motion for a directed verdict has been properly made, and the trial court, after construing the evidence most strongly in favor of the party against whom the motion is directed, finds that upon any determinative issue reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to such party, the court shall sustain the motion and direct a verdict for the moving party as to that issue.
When ruling on a motion for a directed verdict, a court employs a "reasonable minds" test. The court must deny the motion if substantial, competent evidence supports the non-moving party, such that reasonable minds could reach different conclusions based on the evidence. Wagner v. Roche Laboratories (1996),77 Ohio St.3d 116, 119. Thus, the court has a duty to determine whether any evidence of substantial probative value exists to support the non-moving party's claims. Id.; see, also, Strotherv. Hutchinson (1981), 67 Ohio St.2d 282, 284-85. The court must consider neither the weight nor the credibility of the evidence adduced at trial. Wagner, 77 Ohio St.3d at 119. Rather, the court must examine the materiality of the evidence as opposed to the conclusions to be drawn from it. Id. at 119-20; Ruta v.Breckenridge-Remy Co. (1982), 69 Ohio St.2d 66, 68-69. A decision on a directed verdict is a question of law, which we review denovo. Id. at paragraph one of the syllabus; Howell v. DaytonPower Light (1995), 102 Ohio App.3d 6, 13.
The sole issue tried by the jury was whether the appellant's predecessor-in-interest, CSX, abandoned the railroad right-of-way easements over the appellees' parcels. See Hiener v. Kelley,
supra (noting that abandonment is a factual question), citingMethodist Protestant Church of Cincinnati v. Laws (1893), 55 Ohio St. 662. Evidence of an easement holder's mere non-use of an easement is insufficient to establish abandonment. Langhorst v.Riethmiller (1977), 52 Ohio App.2d 137, 140-41. The owner of the servient estate, i.e. the party asserting abandonment of the easement, must show non-use and an intent to terminate the easement. Hiener, supra; Snyder v. Monroe Twp. Trustees (1996),110 Ohio App.3d 443, 457; Wyatt v. Ohio Dept. of Transp. (1993),87 Ohio App.3d 1, 5. Intent to abandon an easement may be inferred from any act inconsistent with the future enjoyment of the easement. Hiener, supra; Snyder, 110 Ohio App.3d at 458. Thus, non-use of a railroad right-of-way coupled with unequivocal acts clearly indicative of abandonment will extinguish a railroad easement. Rieger v. Penn Central Corp., supra; see, also, Schenckv. Cleveland, Cincinnati, Chicago St. Louis Ry. Co. (1919),11 Ohio App. 164.
Non-use of the railroad easement prior to CSX's quitclaim conveyance to the appellant is undisputed. The trial testimony showed that active rail service across the appellees' parcels ended in 1989. Nevertheless, the appellant argues that reasonable minds could not conclude that CSX intended to abandon the former railroad right-of-way. The appellant points to testimony from Richard Hood, a vice president in CSX's real estate division, indicating that CSX never intended to abandon its interest in the right-of-way traversing the appellees' property. Additionally, the appellant emphasizes testimony from Gallia County treasurer Larry Betz, which indicated that CSX continued to pay taxes related to the railroad property until it quitclaimed its interest to the appellant in 1993. Finally, the appellant insists that "the only item that the Appellees attempted to point to as support for an alleged `abandonment' was a document that CSX filed with the Interstate Commerce Commission notifying the ICC of its decision to stop active rail service." As a matter of law, the appellant notes that such a filing does not constitute proof of an intent to abandon an easement.
We agree with the appellant that neither a railroad company's application for abandonment nor the ICC's approval of the application for abandonment is conclusive proof of abandonment of the easement. See Vieux v. East Bay Regional Park Dist. (C.A.9, 1990), 906 F.2d 1330, 1339 (ICC approval of abandonment merely means that abandonment would not hinder ICC's purposes; it is not a determination that railroad has abandoned its lines); CaryEnterprises v. CSX Transportation, Inc. (July 29, 1997), Mich. App. No. 195528, unreported. Despite our agreement with the appellant on this point, we do not agree that a directed verdict was proper. When the ICC gives abandonment approval, state property law controls the disposition of the land upon which the railroad formerly operated. National Assn. of ReversionaryProperty Owners v. Surface Transp. Bd. (C.A.D.C., 1998),158 F.3d 135, 137; see, also, National Wildlife Federation v. InterstateCommerce Commn. (C.A.D.C., 1988), 850 F.2d 694, 704 (state law may extinguish right-of-way only after ICC issues unconditioned certificate of abandonment). In this case, there was ample evidence to support a factual finding of abandonment under Ohio law.
Contrary to the appellant's argument, the appellees presented much more than CSX's application for abandonment with the ICC as evidence of an intent to abandon the railroad easements prior to 1993. The appellees presented testimony that CSX had stopped performing its statutory duties to (1) maintain ditches and drains along the railroad bed (R.C. 4959.01), (2) maintain fences along the right-of-way (R.C. 4959.02), and (3) control noxious weeds along the right-of-way (R.C. 4959.11). One of the appellees testified that he hadn't seen anyone work on the railroad fences or ditches since 1987, while another appellee testified that no one had worked on the fences or noxious weeds since trains stopped running along the tracks. Following the ICC's approval of the abandonment of the rail line in November 1991, CSX took additional steps indicative of an intent to discontinue its use of the right-of-way. There was evidence that CSX, in 1992, removed the ties and rails from the former railroad line crossing the appellees' parcels. Although CSX did not remove bridges that were part of the railroad and kept much of the ballast intact, we are convinced that reasonable minds could reach different conclusions with respect to whether CSX's actions between 1991 and 1993 signified an intent to abandon its easement.
We are mindful that Rieger v. Penn Central Corp., supra,
refused to find an abandonment despite evidence that a railroad had removed rails and ties. In Rieger, just as in this case, there was evidence that the ballast remained intact and the railroad continued to pay taxes on its interest in the right-of-way. Despite the factual similarity to the case before us,Rieger does not support the proposition that the appellees' evidence was insufficient to constitute abandonment as a matter of law. The Rieger court simply held that competent, credible evidence supported the trial court's determination, as trier of fact, that there was no abandonment on the facts presented in that case. See Rieger, supra, at 7. Rieger does not change the principle that abandonment is an issue for the trier of fact. Because abandonment is a matter of intent, the trier of fact must decide what factors or circumstances justify an inference that there was an intent to abandon. Parrett v. Penn Central Corp.,supra.
Because the issue before us is whether the trial court should have directed a verdict in the appellant's favor, we need only determine whether reasonable minds could have disagreed on whether an inference of abandonment was warranted. We decline the appellant's invitation to hold that the facts presented in this case fail to establish abandonment as a matter of law. To render such a holding would inappropriately invade the domain of the trier of fact.
The appellant's emphasis on Mr. Hood's testimony regarding CSX's lack of intent to abandon its easement interest does not change the result. As noted previously, the court must not pass on the weight or credibility of evidence or testimony when deciding a Civ.R. 50 motion. Wagner, 77 Ohio St.3d at 119. The jury was free to either believe or disbelieve Mr. Hood's testimony regarding CSX's intent. State v. Nichols (1993),85 Ohio App.3d 65, 76.
Even if it was not entitled to a directed verdict on the abandonment issue, the appellant contends it was at least entitled to a directed verdict with regard to individual appellees Diana McCarley, John Sexton, and Ross Sexton. The appellant argues that there was "absolutely no evidence or testimony" presented concerning these three appellees. This argument is meritless. A deed admitted into evidence showed Diana McCarley (in addition to Robert McCarley) as a grantee for the McCarley parcel. Further, another deed showed that John and Ross Sexton each owned a one-fourth interest in the Varian parcel. Thus, the record contains evidence concerning these three appellees' ownership interests in the various parcels in question.
A directed verdict in the appellant's favor was inappropriate based on the evidence adduced during trial. Accordingly, the fifth and sixth assignments of error are overruled.
 VII.
In the eighth assignment of error, the appellant argues that the trial court should have honored its request to give the jury separate verdict forms for each set of appellees. The appellant insists that the testimony and evidence contained "significant differences" concerning each set of appellees, implying that it was possible for the jury to conclude that CSX abandoned its easement interest as to one or two of the parcels, but not all three. The trial court refused the appellant's request for separate verdict forms, noting that:
 * * * this court believes that the interest of each of the plaintiff's [sic] are such that uh, even though there was [sic] some different facts with regards to when and when not uh, certain activities performed by the railroad had taken place, that there [sic] are of such a nature that this Court believes that the whole issue of abandonment can be decided. You know, either the * * * railroad had abandoned before the time the park district got it's [sic] property or it didn't. And the Court believes that it will affect all of them as it's presented here.
Although we agree that the trial court probably should have issued multiple verdict forms, we find no error warranting reversal.
Civ.R. 49 (A) requires a trial court to use a general verdict form, "by which the jury finds generally in favor of the prevailing party * * *." See, also, Schellhouse v. Norfolk Western Ry. Co. (1991), 61 Ohio St.3d 520, syllabus. The rule does not prohibit a court from issuing multiple general verdict forms to the jury. Williams v. Oeder (1995), 103 Ohio App.3d 333,342. Further, in some circumstances, a trial court errs by failing to provide the jury with sufficient forms to cover the different verdicts possible under the evidence produced at trial. See 90 Ohio Jurisprudence 3d (1989) 97-98, Trial, Section 465; see, also, Cafaro Construction Co. v. BB Construction Co. ofOhio (Mar. 15, 1999), Mahoning App. No. 96CA87, unreported (noting that trial court erred by failing to provide separate verdict forms) However, even if a court fails to provide multiple verdict forms when it would be prudent to do so, a reviewing court will not reverse the judgment absent a showing of prejudice. See, e.g., Reder v. Antenucci (1989), 62 Ohio App.3d 139,146 (although separate forms may have been "the better practice, " neither party had demonstrated any prejudice);Sherwood v. Swindler (Aug. 18, 1975), Clinton App. No. 299, unreported (noting that "better practice" would have been to provide separate verdict forms, yet finding no prejudicial error considering the totality of the record); see, also, Haines v.Cleveland Ry. Co. (1943), 141 Ohio St. 523, 527 (trial court's error in submitting multiple verdict forms when only one was necessary "was not an error of such magnitude or prejudice * * * as to call for reversal")
In this case, the better practice for the trial court would have been to submit separate verdict forms pertaining to each set of appellees. The issue for the jury was whether the appellant's predecessor, CSX, had abandoned the easements created by the 1871 and 1872 conveyances of the McCarley, Varian, and Watts parcels. There were three separate easement grants in this case. In theory, CSX could have abandoned its right-of-way over one or two, but not all, of the three parcels involved in this case. However, this theoretical possibility does not convince us that we must overturn the jury's verdict. Although the appellees' testimony contains some variations concerning their recollection of events indicative of abandonment, we disagree with the appellant's characterization of these differences as "very significant." By and large, the testimony reflected acts taken by CSX on each parcel prior to the quitclaim conveyance to the appellant. The appellant has not demonstrated how the jury could have found an abandonment of one parcel but not of the others. Further, we note that although the appellant objected to the trial court's decision not to submit multiple verdict forms, the record contains no indication that the appellant requested jury interrogatories. See Civ.R. 49 (B). Jury interrogatories could have clarified the issue presented by the appellant. The seventh assignment of error is overruled.
Having found no prejudicial error, we overrule each of the assignments of error raised by the appellant. The judgment of the trial court is affirmed.
JUDGMENT AFFIRMED.
[1] Pursuant to the ICC Termination Act of 1995, the ICC no longer exists. RLTD Ry. Corp. v. Surface Transp. Bd. (C.A.6, 1999), 166 F.3d 808, 810. The Surface Transportation Board ("STB") became responsible for abandonment applications. Id., citing Section 10903, Title 49, U.S.Code.
[2] The additional plaintiffs who were parties to the complaint that was dismissed in September 1995 were not parties to the re-filed complaint in December 1996.
[3] The second amended complaint also pleaded a cause of action for an unconstitutional taking of property without just compensation. The complaint prayed for damages for trespass, as well as compensation for the appellant's alleged taking of the right-of-way over their property. However, the appellees apparently abandoned the trespass and takings causes of action as the case proceeded to trial. The judgment entered by the court expressly refers to only the causes of action for quiet title and ejectment.
[4] The appellant filed similar motions concerning the original and first amended complaints. The trial court granted the motion on the original complaint, but reversed course and denied the motion on the first amended complaint. The appellees attempted to appeal the trial court's dismissal of the original complaint, but voluntarily dismissed the appeal upon the trial court's decision to deny the appellant's motion concerning the first amended complaint. McCarley v. Bd. of Park Commrs. (July 15, 1997), Gallia App. No. 97CA7, unreported (entry dismissing appeal). The appellant raises no issue regarding the trial court's jurisdiction to take further action in this case after the appellees commenced an appeal of the trial court's ruling dismissing the original complaint. Even if the appellant had raised such a jurisdictional challenge, we would decide that this case is properly before us on the merits. At the time of the trial court's dismissal of the original complaint, the appellees had filed a first amended complaint. The appellees had an absolute right to file the first amended complaint, as the appellant had not yet answered the original complaint. See Civ.R. 15 (A); Steiner v. Steiner (1993), 85 Ohio App.3d 513, 519. Because an amended complaint was still pending at the time the trial court dismissed the original complaint, the order of dismissal was not a final appealable order. See Patlen, Inc. v.Gardner (Aug. 15, 1996), Cuyahoga App. No. 70090, unreported (dismissing appeal of Civ.R. 12 (B)(2) dismissal for lack of final appealable order when plaintiff had filed amended complaint prior to court's ruling). The appellees' original appeal was therefore subject to dismissal in any event. Accordingly, we address the merits of the present appeal, which comes from the trial court's judgment on the appellees' second amended complaint.
[5] The appellees' re-filed complaint also included a damages claim, which would arguably be governed by R.C. 2744.04 (A)'s two-year statute of limitation. If so, the damages claim may have been barred by the appellees' failure to comply with the savings statute. However, we have no need to address this issue because no damages claim ever proceeded to judgment in this case.
[6] Perhaps because of the convoluted procedural history of this case, it is not altogether clear what motion the appellant is referring to in this assignment of error. Although the second amended complaint is the one upon which the appellees were afforded relief, the assignment of error refers specifically to the denial of a motion "initially filed" in this case. Thus, the assignment of error may be construed to refer to the appellant's motion to dismiss the appellees' first amended complaint. The trial court issued an entry denying this motion, but did not expressly address the motion to dismiss the second amended complaint. The appellant could be arguing that if the court had granted its motion to dismiss the first amended complaint, there never would have been a second amended complaint in this case. Because the appellant's motions to dismiss both complaints rested on identical grounds and because the trial court granted neither motion, whether we consider this assignment of error as referring to the first or second amended complaint is immaterial.
[7] In addition, the testimony at trial revealed that the appellant constructed its recreational trail across the appellees' parcels, indicating that it was indeed in possession of the former railroad rights-of-way.
 JUDGMENT ENTRY
It is ordered that the JUDGMENT BE AFFIRMED and that Appellees recover of Appellant costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Gallia County Common Pleas Court to carry this judgment into execution.
Any stay previously granted by this Court is hereby terminated as of the date of this Entry. A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
KLINE, P.J. ABELE, J.: Concur in Judgment and Opinion.
For the Court
 BY: _______________________________ WILLIAM H. HARSHA, Judge
 NOTICE TO COUNSEL Pursuant to Local Rule No. 14, this document constitutes afinal judgment entry and the time period for further appealcommences from the date of filing with the clerk.