OPINION
Delmajean Oaks appeals from a judgment of the Miami County Court of Common Pleas, which granted summary judgment in favor of the Miami County Board of Mental Retardation and Developmental Disabilities, its former superintendent Shirley Turner, and its current superintendent Ann Hinkle (hereinafter collectively referred to as "the Board").
Oaks was hired by the Board as a bus driver in 1968. She was apparently never given a written contract, but from 1987 to 1994 signed a yearly "Intent to Rehire" form indicating that she intended to continue her employment the next year. Eventually, she became an equipment maintenance supervisor, the job she held when her employment was terminated on February 16, 1995. Oaks' termination resulted from an incident in which she stated that she would sign sick leave papers for bus drivers under her supervision who were planning a "sick out" to protest what they, and Oaks, viewed as discriminatory discipline of one of the drivers. Although the incident never resulted in Oaks signing any sick leave papers, it resulted in her termination by Shirley Turner, who was the superintendent of the Board at the time.
In terminating Oaks, Turner conducted a pre-disciplinary conference on February 7, 1995 on the charges of insubordination, failure of good behavior, and malfeasance in office. She notified Oaks of her termination by letter on February 16, 1995, stating that the termination was appealable under R.C. 124.34. Turner also provided Oaks with an "Order of Removal, Reduction, Suspension, Involuntary Discipline Separation," which listed "relevant R.C. 124.34 disciplinary offenses" and stated on the reverse side that appeals should be filed with the State Personnel Board of Review ("SPBR"). Following her termination, Oaks appealed to the SPBR, which dismissed her appeal upon finding that she was an unclassified employee over which it lacked jurisdiction under R.C.124.11(A)(19). By that time, it was too late for Oaks to appeal her termination under R.C. 5126.23, the statute governing removal of unclassified management employees.
Following the dismissal of her appeal to the SPBR, Oaks filed a six-count complaint in April of 1996. The trial court dismissed five of the counts on a Civ.R. 12(b)(6) motion, and Oaks voluntarily dismissed the sixth count. Oaks filed a second complaint in the trial court on August 17, 1999. She raised seven claims for relief: (1) a request for a writ of mandamus compelling reinstatement; (2) a request for reformation of the "Intent to Rehire" form; (3) a breach of contract claim; (4) a declaratory judgment action regarding Oaks' status and rights under the law; (5) a declaratory judgment that several Revised Code sections were unconstitutional; (6) a violation of due process claim under Section 1983, Title 42, U.S. Code; and (7) a fraudulent misrepresentation claim.
On September 29, 1999, the Board filed a motion to dismiss, or in the alternative, a motion for summary judgment. Over the course of several decisions culminating in the January 26, 2000 entry appealed from here, the trial court granted summary judgment in favor of the Board on all of the claims except the second declaratory judgment action (count five), which Oaks abandoned by filing an amended complaint removing that claim.
Oaks raises three assignments of error on appeal.
 THE COMMON PLEAS COURT ERRED AS A MATTER OF LAW IN AWARDING SUMMARY JUDGMENT TO APPELLEES ON COUNTS 1, 2, 3, 4, 6, AND 7 AND IN OVERRULING APPELLANT'S MOTION FOR RECONSIDERATION OF COUNT I AND HER MOTION FOR SUMMARY JUDGMENT ON COUNT 4.
This assignment of error addresses all six of the counts appealed by Oaks in this case. For the purpose of clarity, however, Oaks' contract reformation and Section 1983, Title 42, U.S. Code claims will only be discussed in the second and third assignments of error, which deal specifically with those two counts. The four remaining counts include counts one (mandamus), three (breach of contract), four (declaratory judgment), and seven (misrepresentation). Because the first three involve the same facts and argument, we will deal with them together. We will then deal with the misrepresentation claim separately.
Although her brief is often unclear, Oaks seems to argue that she was a classified employee upon her hire in 1968,[1] but that her status was changed by the legislature in 1988 when it enacted Senate Bill 155, amending R.C. 124.11 to add "[s]uperintendents, and management employees * * * of county boards of mental retardation and developmental disabilities" to the list of unclassified employees. She goes on to argue that, when it made her position (and others like it) unclassified, the legislature enacted two sections designed to provide protection for unclassified management employees who were losing their classified status. The first of the two sections at issue, R.C. 5126.20(E), states:
 "Continuing contract" means a contract of employment that was issued prior to June 24, 1988, to a classified employee under which the employee has completed his probationary period and under which he retains his employment until he retires or resigns, is removed pursuant to section 5126.23 of the Revised Code, or is laid off.
The second section, R.C. 5126.21(E) states: "All management employees of a county board of mental retardation and developmental disabilities who were given continuing contract status prior to the effective date of this section have continuing contract status so long as they maintain employment with the board." Oaks asserts that these two sections gave her continuing contract status as of June 24, 1988. According to Oaks, continuing contract status would require that she be terminated by the Board or that the Board approve her termination.
In arguing that continuing contract status required her to be terminated by the Board, Oaks points to R.C. 5126.21(A)(1), which provides:
 Each management employee of a county board of mental retardation and developmental disabilities shall hold a limited contract for a period of not less than one year and not more than five years * * *. The board shall approve all contracts of employment for management employees that are for a term of more than one year.
Oaks makes two, apparently alternative arguments relating to this section. First, she argues that, because a continuing contract is a contract for more than one year, the Board was required to approve her contract. Oaks then cites to several cases standing for the proposition that the right of removal is incident to the right of appointment. See,e.g., State ex rel. Minor v. Eschen (1995), 74 Ohio St.3d 134, 139. According to Oaks, this means that the Board was the only agent authorized to remove her. She was not removed by the Board, but by Turner. Therefore, Oaks argues that, because termination by one who lacks authority is void, see Minor, 74 Ohio St.3d at 139, Oaks' termination is void, and she is entitled to reinstatement and backpay. Second, Oaks argues that this section required the Board to provide her with a written contract, which it failed to do.
Oaks claims that the trial court erred in granting summary judgment in favor of the Board on the counts related to her mandamus, breach of contract, and declaratory judgment claims. Our review of the trial court's decision to grant summary judgment is de novo. See Helton v.Scioto Cty. Bd. of Commrs. (1997), 123 Ohio App.3d 158, 162. Civ.R. 56(C) provides that summary judgment may be granted when the moving party demonstrates that (1) there is no genuine issue of material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) viewing the evidence most strongly in favor of the nonmoving party, reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made. State exrel. Grady v. State Emp. Relations Bd. (1997), 78 Ohio St.3d 181, 183;Harless v. Willis Day Warehousing Co. (1978), 54 Ohio St.2d 64, 65-66.
There are several problems with Oaks' argument. First, we conclude that the statutes cited by Oaks do not give her the protection she seeks to find in them. Second, even if Oaks had a "continuing contract," we conclude that the Board was not required to approve her removal, as the statutes cited by Oaks specifically contemplate the removal of continuing contract employees under R.C. 5126.23, which gives the superintendent the power to remove management employees. Finally, Oaks' argument that the Board was required to approve her removal because it was required to approve contracts of more than one year overlooks the fact that the Board never approved a contract of more than one year for Oaks.
The SPBR and the trial court found that Oaks was an unclassified employee of the Board. We agree. Under R.C. 124.11(A)(19), Oaks was an unclassified employee. This section provides that "[s]uperintendents, and management employees as defined in section 5126.20 of the Revised Code, of county boards of mental retardation and developmental disabilities" are unclassified employees. Oaks' position was equipment maintenance supervisor. R.C. 5126.20(C) defines "management employee" as "a person employed by a board in a position having supervisory or managerial responsibilities and duties, and includes employees in the positions listed in division (A) of section 5126.22 of the Revised Code." Oaks' position is not listed in R.C. 5126.22(A), but the SPBR ruled that she was an unclassified employee because her job duties constituted "supervisory responsibilities and duties" as defined in R.C. 5126.20(F). Such duties:
 includ[e] the authority to hire, transfer, suspend, lay off, recall, promote, discharge, assign, reward, or discipline other employees of the board; to responsibly direct them; to adjust their grievances; or to effectively recommend such action, if the exercise of that authority is not of a merely routine or clerical nature but requires the use of independent judgment.
There is very little information in the record regarding Oaks' duties; however, the SPBR, quoting from Oaks' position description, found that she was an unclassified employee. Her job description stated that, among other things, she supervised the transportation department, assisted with the development of policies and procedures, did evaluations of drivers, supervised transportation staff, attended meetings, coordinated the training of drivers, assured adherence to laws, participated in hiring drivers, mediated problems, and handled complaints from drivers. These responsibilities are similar to those in R.C. 5126.20(F). Furthermore, it appears from her brief that Oaks does not challenge the trial court's ruling regarding her status as an unclassified employee. Therefore, we find that Oaks was an unclassified employee.
Oaks was also a management employee governed by the provisions of R.C.5126.21. Oaks claims that this section required the Board to provide her with a written contract, while the Board claims, and the trial court found, that this section gave Oaks a one-year unwritten contract, the provisions of which were contained in the statute. As far as we can tell, Oaks argues that she was entitled to and did not receive a written contract under this section, and she also argues that she was a continuing contract employee under R.C. 5126.20(E) and 5126.21(E).
We believe that R.C. 5126.20(E) and 5126.21(E) did not confer continuing contract status on Oaks. These sections, read plainly, merely define a "continuing contract" (R.C. 5126.20(E)) and provide that employees who had already been given continuing contract status would retain that status (R.C. 5126.21(E)). Oaks has failed to create a genuine issue of material fact that she had been given continuing contract status prior to the amendments of Senate Bill 155. We also agree with the trial court that R.C. 5126.21(A)(1) did not require the Board to provide Oaks with a written contract but conferred a one-year contract upon her, and all management employees, unless the Board approved a contract greater than one year. In Oaks' case, there was no Board approval of a contract greater than one year.
As an unclassified management employee, the only requirements for Oaks' removal were contained in R.C. 5126.23. She was entitled to be notified of the charges against her, which she was. She was entitled to a pre-disciplinary conference within thirty days of that notification, and one was held. She was entitled to be notified of the decision within fifteen days of the conference, and she was notified. Finally, she was entitled to request a post-disciplinary hearing, which she failed to do. Therefore, the Board, through Turner, complied with all the requirements of R.C. 5126.23, and Oaks' termination was valid.
Although we find that Oaks did not have a continuing contract, our result would not be different if she had. R.C. 5126.20(E) specifically states that a continuing contract employee may be "removed pursuant to section 5126.23 of the Revised Code." As we have already discussed, Oaks' termination complied with the requirements of R.C. 5126.23. As for Oaks' assertion that the Board was required to remove her because a continuing contract is a contract of more than one year, R.C. 5126.23(C) specifically states that "[i]f the removal, suspension, or demotion action is directed against a management employee, the conference shall be held by the superintendent." It says nothing about Board approval. The statute clearly sets forth removal procedures for Oaks' position. These procedures are identical whether Oaks was a continuing contract employee or a one-year contract employee, and they were followed by Turner in removing Oaks. Therefore, Oaks' termination was valid.
In finding that Oaks' termination was valid, we necessarily find that the trial court did not err in granting summary judgment in favor of the Board on Oaks' mandamus, breach of contract, and declaratory judgment claims.
With regard to the claim of fraudulent misrepresentation (count seven), Oaks alleges that she was deliberately misled by Turner and the Board into believing that she was a classified employee so that she would appeal to the SPBR and lose her rights to appeal under R.C. 5126.23, the section dealing with termination of management employees. She bases this assertion on the use of the R.C. 124.34 form, which stated that she could appeal to the SPBR, and the language in Turner's letter to that effect. The Board and Turner argue that they proceeded with her termination as though she was a classified employee because they were unsure of her status and wanted to err on the side of caution. Classified employees have more procedural protections in termination proceedings.
Fraudulent misrepresentation requires:
 (a) a representation or, where there is a duty to disclose, concealment of a fact, (b) which is material to the transaction at hand, (c) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred, (d) with the intent of misleading another into relying upon it, (e) justifiable reliance upon the representation or concealment, and (f) a resulting injury proximately caused by the reliance.
 Burr v. Stark Cty. Bd. of Commrs. (1986), 23 Ohio St.3d 69, paragraph two of the syllabus; Cohen v. Lamko, Inc. (1984), 10 Ohio St.3d 167,169. The trial court held that there was no fraudulent misrepresentation and granted summary judgment in favor of the Board. Even if we were to agree with Oaks that there was a misrepresentation, summary judgment would still be appropriate as she has not created a genuine issue of material fact that the Board or Turner knew that she was unclassified or intended to mislead her into relying on their representation.[2]
Without such evidence, Oaks' fraudulent misrepresentation claim cannot succeed. Therefore, while we caution the Board to avoid such misrepresentations in the future, we must find that the trial court did not err in granting summary judgment on this claim.
The first assignment of error is overruled.
 THE COMMON PLEAS COURT ERRED AS A MATTER OF LAW IN AWARDING SUMMARY JUDGMENT TO APPELLEES ON COUNT 2.
Under this assignment of error, Oaks argues that the "Intent to Rehire" form should be reformed to constitute the employment contract of the parties and to include the terms set forth in R.C. 5126.21, in addition to a term stating that she was a continuing contract employee who could only be terminated by the Board. The trial court granted summary judgment in favor of the Board on this claim, ruling that the form was not amenable to reformation. Oaks claims that the trial court should not have granted summary judgment on this issue.
Reformation is an equitable remedy used to modify a writing that fails to reflect the intention of the parties due to mutual mistake. See Snyderv. Monroe Twp. Trustees (1996), 110 Ohio App.3d 443, 452. Oaks' argument for reformation of the "Intent to Rehire" form is, as she concedes in her brief, quite an "unusual" one. She argues that the form was not intended to be a contract, but that, since the Board argued that it was a contract in its efforts to have her SPBR appeal dismissed, it should be held to its argument. The form, however, merely stated that the Board intended to rehire Oaks for another year and that she intended to continue her employment for another year. Therefore, at best, the form is a one-year contract of employment. Oaks argues, however, that it should be reformed to include a provision that she was a continuing contract employee who could only be removed pursuant to R.C. 5126.23. She has created no genuine issue of material fact that this was the actual agreement that the parties intended with the "Intent to Rehire" form. On the contrary, she often argues that it was not intended to be a contract at all. While Oaks would like us to essentially create a contract with her desired terms, there is no legal basis for us to do so in this case. Thus, the trial court did not err in granting summary judgment on this claim.
The second assignment of error is overruled.
 THE COMMON PLEAS COURT ERRED AS A MATTER OF LAW IN AWARDING SUMMARY JUDGMENT TO APPELLEES ON COUNT 6.
Under this assignment of error, Oaks argues that the trial court erred in granting summary judgment in favor of the Board and the superintendents (Hinkle and Turner) on her claim under Section 1983, Title 42, U.S. Code. She argues in this claim that she was deprived of her right to continued employment without due process of law and without just compensation. The trial court ruled that the claim against Ann Hinkle in her official capacity should be dismissed because Hinkle did not engage in any of the conduct complained of and the suit against Hinkle was effectively a suit against the Board itself. See Kentucky v.Graham (1985), 473 U.S. 159, 165-66, 105 S.Ct. 3099, 3105. The trial court dismissed the claims against Turner in her official and individual capacities on the basis of qualified immunity. Finally, the court ruled that the conduct of the Board itself did not rise to the level of a constitutional violation.
In light of our disposition of the first assignment of error, it is unnecessary for us to review the trial court's decisions on the issue of qualified immunity. Oaks' claim under Section 1983, Title 42, U.S. Code rests on two assertions. First, she argues that R.C. 5126.21(A)(1) required the Board to provide her with a written contract and that the Board's failure to do so allowed Turner and the Board to mislead her. Second, she argues that Turner and the Board deliberately misled her regarding her status as an unclassified employee in a successful attempt to deprive her of her rights to a post-termination hearing under R.C.5126.23. As we have already found that R.C. 5126.21(A)(1) did not require the Board to provide Oaks with a written contract and that there was no intentional misrepresentation on the part of Turner or the Board, we must necessarily find that there was no conduct on the part of Turner or the Board to deprive Oaks of her constitutional rights to due process. On the contrary, Oaks received all the process due to her under R.C. 5126.23, including notification of the charges against her and a pre-termination conference. Thus, we find that the trial court did not err in granting summary judgment on behalf of the Board.
The third assignment of error is overruled.
The judgment of the trial court will be affirmed.
GRADY, J. and YOUNG, J., concur.
[1] There is no evidence in the record of Oaks or the Board ever signing an employment contract.
[2] Oaks points to a deposition taken of Turner for Oaks' first case in 1996 to support her contention that Turner and the Board knew she was unclassified and deliberately misled her to prevent her from appealing under R.C. 5126.23. There is some question as to whether this is properly part of the record. Oaks argues that she requested that the trial court take judicial notice of the documents in the previous case, but it is unclear whether the trial court did so. Even if this document were part of the record, it would be unhelpful to Oaks, as it does not contain the testimony Oaks claims. Far from admitting that she knew Oaks was unclassified when she terminated her, Turner stated only that she believed the matter was being looked into by their attorneys and was still unclear. Even taking this evidence in the light most favorable to Oaks, it is not evidence of knowledge of the falsity of Turner and the Board's representation or of an intent to induce Oaks' reliance.